COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Elder and Senior Judge Cole
Argued at Salem, Virginia


JAMES P. HART, III

v.         Record No. 0931-97-3

MARIE HOLT HART                                    OPINION BY
                                          JUDGE SAM W. COLEMAN III
MARIE HOLT HART                                MARCH 31, 1998

v.         Record No. 0979-97-3

JAMES P. HART, III


             FROM THE CIRCUIT COURT OF ROANOKE COUNTY
                       Roy B. Willett, Judge

             Charles B. Phillips (Phillips & Swanson, on
             briefs), for James P. Hart, III.

             William H. Cleaveland (Leisa Kube Ciaffone;
             Rider, Thomas, Cleaveland, Ferris & Eakin;
             Gentry, Locke, Rakes & Moore, on briefs), for
             Marie Holt Hart.


     James P. Hart, III (husband) and Marie Holt Hart (wife)

separately appeal the trial court's divorce decree and equitable

distribution award.  Husband contends the trial court erred when

it:  (1) divided in kind real property titled jointly to both

parties; (2) designated a boundary line between two of the

parcels different from the boundary recommended by the

commissioner; (3) created joint easements of ingress and egress

on the partitioned parcels and ruled that each party would bear

the entire costs of maintaining the sections of such easements

located on their respective tracts regardless of the extent of

use by the other, their tenants, and licensees; and (4)

classified husband's Central Fidelity account as marital property and distributed one-half of the account assets to wife. Wife contends the trial court erred when it: (1) calculated the value of husband's separate share of a certain mortgage note; (2) failed to classify as wife's separate property certain money in a USAA bond fund which she claims she traced to money she inherited; and (3) estimated husband's contributions to the USAA bond fund when it divided the fund upon consideration of the factors under Code § 20-107.3(E). For the reasons that follow, we affirm in part, reverse in part and remand to the trial court for further proceedings in accordance with this opinion.

## I. BACKGROUND

The parties were married in New York in 1968 and lived in a home that husband had purchased before the marriage. In 1986, they sold the New York home, receiving $40,000 part payment and a $219,000 twenty-year promissory mortgage note. They relocated to Virginia, where they purchased a forty-two acre parcel of land adjacent to Smith Mountain Lake (Plantation Point) which they jointly titled. At Plantation Point, they built a marital home and eight rental units. Due to the parties' concerns over the health of wife's parents (the Holts), they also constructed a separate residence for the Holts on the Plantation Point property (Hillsdale). Mrs. Holt contributed approximately $48,000 to purchase the building materials for Hillsdale. The parties and the Holts established neither a repayment nor lease agreement nor

- 2 -

did they execute a deed that conveyed any estate or interest in the property to the Holts.  The parties merely acknowledged that Hillsdale was built as a residence for the Holts to live in "as long as they were able."

After selling the New York home in 1986, the parties opened a USAA Virginia Bond Fund account using the $40,000 down payment from the New York home as the initial deposit.  Over the years, money from various sources was deposited into the fund, including amounts contributed by Mrs. Holt, the New York mortgage note payments, rental receipts from the lessees of the Plantation Point rental units, husband's IBM pension payments, and $20,500 that wife inherited from her great aunt.

The parties separated on February 4, 1994.  They executed a separation agreement in which they agreed to temporarily "split their net income" pending a judicial determination and award of equitable distribution.  Husband deposited his share of the income into a Central Fidelity bank account that he opened after the parties separated.

In October 1994, husband filed for divorce on the ground of adultery.  The trial court appointed a commissioner in chancery to hear evidence, report factual findings, and make recommendations regarding, among other matters, how to equitably distribute the parties' marital property.  After receiving the commissioner's report, the trial court specifically found that the wife had committed adultery but granted husband a divorce on

the ground of having lived separate and apart and approved the commissioner's equitable distribution recommendations with some modifications.

## II.  GENERAL PRINCIPLES

Code § 20-107.3 governs how property shall be equitably distributed when a marriage is dissolved.  The statute provides that the court shall determine legal title as between the parties, shall classify the parties' property as separate or marital property, shall evaluate the marital and separate property, and shall determine the rights and interests of the parties in the marital property.  The court must then equitably divide the marital property in the manner authorized by the statute, taking into consideration the factors enumerated in subsection (E).  See generally Code § 20-107.3.

On appeal, the trial court's award of equitable distribution will not be reversed "unless it appears from the record that the chancellor has abused his discretion, that he has not considered or misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying his resolution of the conflict of the equities." Robinette v. Robinette, 10 Va. App. 480, 486, 393 S.E.2d 629, 633 (1990) (citations omitted).  A decree confirming a commissioner's report is presumed correct and will not be disturbed unless plainly wrong or without evidence to support it.  Pelfrey v. Pelfrey, 25 Va. App. 239, 244, 487 S.E.2d 281, 283 (1997); Gamer v. Gamer, 16 Va. App. 335, 339, 429 S.E.2d

- 4 -

618, 622 (1993).

## III.  DIVISION OF PLANTATION POINT PROPERTY

Upon consideration of the factors enumerated in Code § 20-107.3(E), the commissioner recommended that the Plantation Point property be divided into three parcels:  one parcel to husband, which included the marital home and four rental units; a second parcel of equal value to wife, which included the Hillsdale home and four rental units, and a third parcel which is to remain titled to both parties as tenants in common.  The commissioner recommended that the parties be given the option of purchasing the undivided interest of the other in the third tract and if they failed to agree upon such a sale, the third tract would be sold.  The commissioner further recommended that easements for ingress and egress be established on the partitioned properties, which would be a joint easement along a driveway that runs through both tracts of land.  The commissioner recommended that wife should be solely responsible for the cost of maintaining the portion of the easement that is solely located on and serves only her property and that both parties should be equally responsible for the cost of maintaining the easement that is located on husband's property and serves both tracts.

The trial court approved the commissioner's recommendations with two exceptions relevant to this appeal.  First, the trial court referenced the lake's 800-foot contour line in designating the boundary line between the two parcels; the commissioner had generally referenced that line as the lake's "water line."

Second, the trial court ruled that the cost of maintaining the joint easement "shall be the sole responsibility of the respective owners" of the tracts across which the easements run.

## A. Division In Kind

We hold that the trial court did not err by dividing the Plantation Point property into separate parcels rather than allotting the whole property to James P. Hart in exchange for his agreement to purchase wife's interest at fair market value. Code § 20-107.3(C) authorizes the trial court to "order the division or transfer, or both, of jointly owned marital property . . . based upon the factors listed in subsection E." Under this provision, the trial court may, in its discretion, order a division in kind of the property, permit either party to purchase the interest of the other and direct the allocation of the proceeds, or order a public or private sale of the property. See id.; Gaynor v. Hird, 11 Va. App. 588, 592, 400 S.E.2d 788, 790 (1991).

Code § 20-107.3(C), when enacted in 1982, did not authorize a trial court to divide or transfer title to property except that "in the final decree of divorce the court may partition marital property which is titled in the names of both parties." The initial equitable distribution statute permitted trial courts in their final divorce decrees to partition jointly titled property in order to effectuate a property division according to the parties' legal title rather than be required to file a separate

suit for partition. Morris v. Morris, 3 Va. App. 303, 309-10, 349 S.E.2d 661, 665 (1986). Partition as authorized in the divorce case was, however, no different from partition prior to equitable distribution and was required to conform with Code § 8.01-81 et seq. Clayberg v. Clayberg, 4 Va. App. 218, 221, 355 S.E.2d 902, 904 (1987). Code § 8.01-83 required trial courts, when partitioning realty, to partition the property in kind, except when "partition cannot conveniently be made, [in which case] the entire subject may be allotted to any one or more of the parties who will accept, and pay therefor to the other parties such sums of money as their interest therein may entitle them to," or, alternatively, to sell the property and divide the proceeds. See Sensabaugh v. Sensabaugh, 232 Va. 250, 256, 349 S.E.2d 141, 144-45 (1986); Nickels v. Nickels, 197 Va. 498, 501-02, 90 S.E.2d 116, 118 (1955) (applying Code §§ 8-690 and 8-692). In a partition proceeding, the court was not authorized to order a sale or an allotment of the property to one of the owners in exchange for its value if the property could have been divided in kind. Leake v. Casati, 234 Va. 646, 649, 363 S.E.2d 924, 926 (1988). Property rights were considered "[s]o sacred . . . that to take it from one man and give it to another for private use [was] beyond the power of the state itself, even upon payment of full compensation." Id. (citation omitted). Furthermore, the fact that property may be less valuable when divided in kind is "insufficient to deprive a co-owner of his

'sacred right' to property." <u>Sensabaugh</u>, 232 Va. at 258, 349 S.E.2d at 146.

In 1988, the General Assembly amended Code § 20-107.3(C) to delete the provision authorizing partition and substituted in its stead the authority, "based upon the factors listed in subsection E, [to] divide or transfer or order the division or transfer, or both, of jointly owned marital property, or any part thereof." The statute expressly authorized the court either to divide the property, permit one party to purchase it with the court allocating the proceeds, or direct that it be sold, in whole or in part, by public or private sale "without the necessity of partition." <u>Id.</u> The amendment has the effect of permitting the court to divide jointly owned realty as a marital asset subject to equitable distribution according to the rights and equities of the parties and subsection (E) factors rather than partition the property according to legal title and adjust the equities by a monetary award. <u>See</u> <u>Frazer v. Frazer</u>, 23 Va. App. 358, 371-72, 477 S.E.2d 290, 296-97 (1996).

We hold that the trial court did not err in accepting the commissioner's factual findings and conclusions of law to support the in-kind division of the property.

The commissioner found that "the lifetime goals of <u>both</u> parties for retirement was the occupancy of this unique parcel of land." The commissioner visually inspected the property and heard testimony from an expert witness describing how the

property could be partitioned.  Based on these facts, the commissioner concluded that Plantation Point should be partitioned so that both husband and wife could occupy the land.  The evidence supports the commissioner's finding that Mrs. Hart's mother, Mrs. Holt, contributed substantial funds to buy materials for the construction of the Hillsdale home on the property and that the parties contemplated that Mrs. Holt would live in the Hillsdale home for her lifetime.  Although a third party cannot be granted a monetary award or a trust in marital property, Wooley v. Wooley, 3 Va. App. 337, 349 S.E.2d 422 (1986), on these facts the commissioner did not err in awarding Mrs. Hart an equal in-kind share of the Plantation Point property in view of her monetary and non-monetary contributions to the acquisition, improvement, maintenance and construction on the property, including the monetary contributions from Mrs. Hart's mother, Mrs. Holt.  Both the commissioner and the trial judge considered the factors under Code § 20-107.3(E) in arriving at the in-kind division.  See Frazer, 23 Va. App. at 372, 477 S.E.2d at 296.  "Fashioning an equitable distribution award lies within the sound discretion of the trial judge and that award will not be set aside unless it is plainly wrong or without evidence to support it."  Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990).  Accordingly, we cannot say the trial court's decision to divide in kind Plantation Point was plainly wrong or without evidence to support it, or that it was an abuse

of

discretion.[1]

### B. Boundary Lines

Husband contends the trial court abused its discretion when it referenced the lake's 800-foot contour line as one boundary between the parties' properties. He claims the commissioner, in recommending a division of the property, intended that the boundary be referenced to the 795-foot contour line of the lake. The trial court's adjustment of the boundary line will have the effect of reducing the size of husband's tract and increasing the size of wife's tract by a small strip of property. Thus, he argues, the trial judge abused his discretion when he "overruled the Commissioner and set the line to the 800-foot contour line" without specifying his reasons for doing so.

Husband's contention lacks merit. In recommending an in-kind division, the commissioner referenced the boundary line in dispute to the "water line." The commissioner's report does not indicate whether the "water line" refers to the 795-foot contour line, as husband presumes, or the 800-foot contour line. It appears from the record that the commissioner alluded to the "water line" because no plat or geological survey had been made

---

[1]On brief, husband contested the trial court's assignment of sixty percent of the Hillsdale property to wife in partitioning the property. At oral argument, husband conceded that the trial court did not abuse its discretion in dividing the partitioned property, and, therefore, we shall not consider that argument in this appeal.

of the property at the time of the commissioner's report.  We do not believe the trial court "overruled" the commissioner's recommendation.  Moreover, the 800-foot contour line was used by the surveyor in determining the acreage of the respective parcels.  It was from these measurements that the trial court determined the property value of each parcel in fashioning the equitable distribution award.  Accordingly, we cannot say the trial court abused its discretion by designating the boundary line of the respective properties in reference to the 800-foot contour line.

### C.  Maintenance of Joint Easement

Husband next argues the trial court erred when it ruled that the costs of maintaining the driveway as a joint easement shall be the sole responsibility of the party who owns the parcel over which the easement runs.  We agree.

Under the common law, the power to grant easements in a suit for partition is necessarily implied in the court's power to make the partition.  See Martin v. Martin, 95 Va. 26, 29-30, 27 S.E. 810, 811-12 (1897) (upholding creation of easement to allow access to water source located on servient estate after partition); see also 59A Am.Jur.2d Partition § 299 at 172-73 ("Since the beneficial and convenient partition of real estate will often require that a right of way . . . or easement, be given to one share in the parts assigned to other shares, the power to create such rights and privileges is held to be

necessarily implied in the grant of jurisdiction to make partition.").  Partition, as it was authorized under Code § 20-107.3, is no different from partition at common law and as codified in Code § 8.01-81 et seq., except that it could be done in the divorce proceeding rather than a separate suit.  Clayberg, 4 Va. App. at 221, 355 S.E.2d at 904.  Thus, although the power of the divorce court to divide jointly owned property has been expanded beyond the power to partition property according to legal title, it follows that a trial court has the same power to establish easements for ingress and egress when dividing real estate in a divorce case as it would have had in a partition suit.

However, the trial court abused its discretion by ruling that the cost of maintaining the joint easement "shall be the sole responsibility of the owners" across whose property the easement runs.  The effect of this ruling is to place the sole responsibility of maintaining and repairing a jointly used roadway upon the owner and successors in title of the servient tract, with no responsibility of the owner or lessee of the dominant tract who may use and benefit from the easement equally.  Generally, under the common law, the owner of an easement has a duty to maintain the easement and must bear the entire cost of its maintenance and upkeep.  See Anderson v. Lake Arrowhead Civic Assoc., 253 Va. 264, 273, 483 S.E.2d 209, 214 (1997); Oney v. West Buena Vista Land Co., 104 Va. 580, 585, 52 S.E. 343, 344

- 13 -

(1905).  This general rule only applies where the dominant estate owner is the sole user of the easement.  See 1 Friedman, Contracts and Conveyances of Real Property § 4.9(m) (5th ed. 1991).  "[W]here the easement owner is not the sole user of a private right-of-way, but uses it in common with the servient [estate], then the costs of repair and maintenance should be [proportionately] distributed among all users" between both the dominant and servient estates.  Lindhourst v. Wright, 616 P.2d 450, 454-55 (Okla. App. 1980) (quoted in Marvin E. Nieberg Real Estate Co. v. Taylor-Morley-Simon, 867 S.W.2d 618, 623 (Mo. App. 1993)); see Bowen v. Buck and Fur Hunting Club, 550 N.W.2d 850, 851 (Mich. App. 1996); Janes v. Politis, 361 N.Y.S.2d 613, 615-16 (Sup. Ct. 1974); McManus v. Sequoyah Land Assoc., 20 A.L.R.3d 1015, 1023 (Cal. App. 1st Div. 1966); see also 25 Am.Jur.2d Easements and Licenses § 85 at 492 (1966) ("[W]here a private road is used in common by the owner of land across which such road runs and by a person who has an easement of way over it, the burden of reasonable repairs must be distributed between them in proportion as nearly as possible to their relative use of the road.").  Thus, we hold "that the duty of repair [for a jointly owned easement for ingress and egress] should fall where reason, convenience and equity require" and should be apportioned among all those who own and have the right to use the easement.  Lindhourst, 616 P.2d at 455 (citation omitted).

Because both parties and their tenants will use the joint

- 14 -

driveway easements to access the public road and the waterfront, the costs of maintaining and repairing the easements should be apportioned between the parties.  Accordingly, we reverse the trial court's ruling concerning the maintenance costs of the easements and remand the case for the trial court to enter a decree and take such further action in conformity with this holding that shall be necessary to define the parties' property rights and responsibilities upon the appropriate real estate records.

### IV.   CENTRAL FIDELITY ACCOUNT

The parties' separation agreement provided that they would "split" their net income earned from the time of separation until the court's equitable distribution decree.  Husband was to "arrange the split by sending a check on the first of each month to the wife in the amount of $3,630.22," which represented one-half of the income derived from the couple's rental receipts, mortgage note payments, and IBM pension payments.  The agreement further provided that "[a]fter 45 days, [one-half] of the cost of Husband's efforts to manage, maintain, but not to improve, the rental properties shall be credited in the final division of assets."  (Emphasis added).  Contrary to the terms of the agreement, husband contemporaneously deducted the expenses associated with the rental units from the couple's share of gross total income each month.  He paid wife one-half of the net income and placed his net share into the Central Fidelity account, which

- 15 -

he opened after separation.

The commissioner recommended that under the terms of the agreement husband was required to pay wife one-half of the couple's post-separation income each month and subsequently receive "credit" for the rental expenses when the court made its equitable distribution award. In determining the amount of rental expense to credit husband, the commissioner calculated the amount of the expenses that had been deducted from wife's monthly payments and subtracted that amount from one-half of husband's total rental expenses incurred after separation. The commissioner determined from his calculation that husband was entitled to an additional credit for expenses that he had paid in the amount of $2,199.39, which amount was to be offset against the wife's total equitable distribution award. Additionally,

the commissioner recommended classifying the account as marital property and dividing the account assets as part of the court's monetary award. The trial court approved the commissioner's recommendations. Husband contends the post-separation income was not marital property subject to equitable distribution under Code § 20-107.3(A)(2) and, therefore, the trial court erred in classifying it as marital and including it in the equitable distribution award.

The trial court did not err when it classified the account as marital property. Under Code § 20-107.3, all property acquired during the marriage and before the last separation of

the parties is presumed to be marital property in the absence of satisfactory evidence that it is separate property. See Stainback v. Stainback, 11 Va. App. 13, 17, 396 S.E.2d 686, 689 (1990); see also Stratton v. Stratton, 16 Va. App. 878, 881, 433 S.E.2d 920, 922 (1993) ("[T]he character of property at the date of acquisition governs its classification pursuant to Code § 20-107.3."). The fact that a portion of the parties' income in the fund was received after the separation does not control the classification of income from jointly titled property whether received before or after the separation. The evidence established that the account accumulated payments from assets that were acquired during the marriage. Moreover, under Code § 20-107.3(A)(2)(i), "all property titled in the names of both parties, whether as joint tenants, tenants by the entirety, or otherwise" is marital property. The rental properties were titled in the names of both parties, and, thus, any income from such jointly owned properties was also jointly owned and was properly classified as marital property. See Dietz v. Dietz, 17 Va. App. 203, 211, 436 S.E.2d 463, 468 (1993). "[M]arital property, in the absence of a valid, express agreement by the parties, cannot become the separate property of one of the parties." Wagner v. Wagner, 4 Va. App. 397, 404, 358 S.E.2d 407, 410 (1987). Here, rather than stipulate that the post-separation income is separate property, the separation agreement states that the parties shall divide "their" net income.

Although the commissioner correctly found that the account assets were marital property and recommended that the monetary award be properly adjusted by crediting husband for rental expenses that had not been previously deducted from the wife's share of the income, he improperly included the husband's post-separation income as marital property in calculating the monetary award.  Code § 20-109 provides that divorcing parties may agree to the "terms of a monetary condition or consideration."  Here, the separation agreement stipulated how the parties would split their post-separation income.  Husband paid wife her share of the income in accordance with the agreement.  The trial court may not enter a decree that is inconsistent with a valid agreement between the parties.  See Westbrook v. Westbrook, 5 Va. App. 446, 452, 364 S.E.2d 523, 527 (1988) (reversing court's classification of real estate as separate where parties executed postnuptial agreement stating that property was marital property).  Because the parties' post-separation income had already been distributed according to the terms of the separation agreement, the trial court erred in accepting the commissioner's recommendation to include husband's share of the income in its equitable distribution award.  According to the agreement, the trial court's only task was to calculate husband's "credit" for rental expenses not already deducted.  The Central Fidelity account assets should have been

left alone.[2]  Accordingly, we affirm the trial court's ruling crediting husband against the monetary award with having paid wife's one-half of the rental expenses.  However, we reverse the trial court's inclusion and division of the Central Fidelity account assets in the monetary award.  On remand, the trial court shall deduct from the marital estate one-half of the total Central Fidelity account assets.

### V.   MORTGAGE NOTE

Husband purchased the New York home prior to the marriage for $27,000 financed by a mortgage on the property.  Husband testified that he improved the property before the marriage by installing a pool and adding carpet to the home "at a cost of $10,000."  At the time of marriage, the balance on the mortgage was $20,835.  Eighteen years later, the parties sold the home for $259,000, receiving a $40,000 cash down payment and a $219,000 mortgage note payable over twenty years.

Citing Code § 20-107.3(A)(3)(d-e), the commissioner classified the mortgage note as hybrid property and determined the respective marital and separate property portions of the note using "the methodology of hybrid tracing."  The commissioner

---

[2] The trial court found that an additional $10,000 repaid by husband's sons in satisfaction of a previous loan was marital property and should also be distributed in the decree.  The loan was made with funds that had already been distributed pursuant to the separation agreement and should not have been redistributed in the equitable distribution award.  Because husband used funds from the Central Fidelity account in order to make this loan, the trial court also erred in including this amount in the monetary award.

- 19 -

found that husband separately contributed $16,265 to the purchase and improvement of the home, which included $2,700 from husband's down payment on the house, pre-marital mortgage payments in the amount of $3,565, and "the pool construction and carpet costs [in the amount of] $10,000." (Emphasis added). He further found that the parties contributed $17,335 of marital property to the post-marital mortgage payments. Based on these figures, the commissioner found that 48.4% of the New York property was husband's separate property and that 51.6% was marital property. Thus, the balance of the mortgage note was 48.4% the husband's separate property and 51.6% was marital property.

Pursuant to the 1990 amendments, the General Assembly adopted the concept of hybrid property and established principles to govern its classification and distribution.[3] See Code

_____

[3]Code § 20-107.3(A) provides, in pertinent part:

> (3) The court shall classify property as part marital property and part separate property as follows:
>
> *     *     *     *     *     *     *
>
> d. When marital property and separate property are commingled by contributing one category of property to another, resulting in the loss of identity of the contributed property, the classification of the contributed property shall be transmuted to the category of property receiving the contribution. However, to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, such contributed property shall retain its original classification.

§ 20-107.3(A)(3).  Wife does not challenge the commissioner's classification of the promissory note as hybrid property under Code § 20-107.3(A)(3).  Rather, she contends the commissioner erred when he calculated the value of husband's separate property in the home and promissory note by including the amount husband paid for the improvements rather than the value which the improvements added to the property.  The issue has not been previously decided in Virginia.

The hybrid tracing methodology employed by the commissioner (..continued)

> e.  When marital property and separate property are commingled into newly acquired property resulting in the loss of identity of the contributing properties, the commingled property shall be deemed transmuted into marital property.  However, to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, the contributed property shall retain its classification.

was adopted in the case of Brandenburg v. Brandenburg, 617 S.W.2d 871 (Ky. Ct. App. 1981).  In Brandenburg, the Kentucky Court of Appeals approved a formula that apportioned the marital and non-marital components of hybrid property in "the same percentages as their respective contributions to the total equity in the property."  617 S.W.2d at 872.  It stated:

> [T]here is to be established a relationship between the nonmarital contribution and the total contribution, and between the marital contribution and the total contribution. These relationships, reduced to percentages, shall be multiplied by the equity in the property at the time of distribution to establish the value of the nonmarital and marital properties.
>
> With this principle established, we provide the following definitions:
>
> Nonmarital contribution (nmc) is defined as the equity in the property at the time of marriage, plus any amount expended after marriage by either spouse from traceable nonmarital funds in the reduction of mortgage principal, and/or the value of improvements made to the property from such nonmarital funds.
>
> Marital contribution (mc) is defined as the amount expended after marriage from other than nonmarital funds in the reduction of mortgage principal, plus the value of improvements made to the property after the marriage from other than nonmarital funds.
>
> Total contribution (tc) is defined as the sum of nonmarital and marital contributions.
>
> Equity (e) is defined as the equity in the property at the time of distribution. This may be either at the date of the decree of dissolution, or, if the property has been sold prior thereto and the proceeds may be traced, then the date of the sale shall be

the time at which the equity is computed.

The formula to be utilized is:

$$\frac{nmc}{tc} \times e = \text{nonmarital property}$$

$$\frac{mc}{tc} \times e = \text{marital property}$$

Id. (emphasis added).

We hold that the Brandenburg formula is an acceptable method of tracing and determining the value of the marital and separate property components of hybrid property under Code § 20-107.3(A)(3).[4]  However, the commissioner misapplied the Brandenburg formula to the facts of this case.  Brandenburg specifically provides that a party's non-marital contributions to hybrid property may include "the value of improvements" to the property.  617 S.W.2d at 872 (emphasis added).  It is the value that improvements add to the property, not their cost, that is the proper consideration because the court is apportioning the equity in the hybrid property when it traces the sources of contributions to that property.  Here, the commissioner made no finding as to the value added to the equity in the New York home by the addition of the pool and carpeting.  Rather, the commissioner accepted the total cost of the improvements as though they increased the value of the property to that degree when he calculated husband's separate property portion of the

_____

[4]By approving this formula, we do not intend to imply that this is the only acceptable method of tracing and determining the marital and separate property interests of hybrid property.

- 23 -

promissory note.  Accordingly, the trial court erred in accepting the commissioner's finding concerning the values of the separate and marital shares of the mortgage note.  On remand, the chancellor shall determine the husband's separate interest based on the value added by the improvements rather than their cost.

## VI.   USAA BOND FUND

As previously noted, the USAA bond fund consisted of monies the parties accumulated from different sources, including rental receipts, the husband's IBM pension fund, contributions from Mrs. Holt, and $20,500 that wife inherited as her separate property. The commissioner classified the bond fund as marital property. He found that the parties had extensively commingled separate and marital property in the fund and that neither party had traced his or her separate contributions as a discrete identifiable item in the account, including wife's deposit of $20,500 from her inheritance.  The commissioner concluded that because the parties' respective contributions to the fund could only be approximated, the entire fund was marital property that would be subject to equitable distribution based upon consideration of the source of contributions as provided in Code § 20-107.3(E)(2).

In order to approximate husband's contributions to the bond fund, the commissioner performed a series of calculations. First, he calculated the deposits of IBM pension payments and the contributions from Mrs. Holt.  Then, he determined the gross rental receipts and deducted from that figure the rental expenses

as shown on husband's tax forms, from which he was able to determine the amount of the deposits that were net marital rental income.  Then, he subtracted the total of these amounts from the total deposits to the fund to determine the portion of deposits attributable to the mortgage note payments.  Finally, the commissioner determined the value of the marital and separate property shares of the mortgage payments by multiplying the balance in the fund by the separate and marital property percentages calculated in the hybrid trace of the mortgage note.

After consideration of the subsection (E) factors, the commissioner recommended dividing the fund's assets in the amount of fifty-seven percent (57%) to husband and forty-three percent (43%) to wife.  The trial court approved the commissioner's recommendations and divided the fund accordingly.

Wife argues the trial court erred when it failed to credit her $20,500 deposit of inheritance proceeds as separate property. We agree.  We recently held that:

> [i]n order to trace the separate portion of hybrid property, a party must prove that the claimed separate portion is identifiably derived from a separate asset.  This process involves two steps:  a party must first (1) establish the identity of a portion of hybrid property and (2) directly trace that portion to a separate asset.

Rahaban v. Rahaban, 26 Va. App. 195, 208, 494 S.E.2d 135, 141 (1997).  When a party satisfies this test, and by a preponderance of the evidence traces his or her separate contributions to commingled property, the Code states that the contributed

separate property "shall retain its original classification." Code § 20-107.3(A)(3)(d-e) (emphasis added).

Here, the commissioner found that wife deposited $20,500 from an inheritance into the account on March 25, 1991. Under Code § 20-107.3(A)(1)(ii), wife's inheritance was separate property which she commingled with marital property in the USAA bond fund. The evidence established that no withdrawals were made from the account after wife deposited the inheritance money. See Brown v. Brown, 324 S.E.2d 287, 289 (N.C. App. 1985) (separate property deposited into marital bank account was retraceable where no withdrawals were made after deposit and balance never fell below amount of deposit); cf. Pollock v. Pollock, 499 P.2d 431, 437 (Wash. App. 1972) (separate property deposited into marital bank account was community property where party failed to establish character of funds withdrawn thereafter). Wife identified the $20,500 portion of the USAA bond account and directly traced that portion to her deposit of separate property in the form of inheritance proceeds. Under these circumstances, the Code mandates that wife's deposit be classified as separate property. See Peter N. Swisher et al., Virginia Family Law § 11-6 at 408-09 (2d ed. 1997). Accordingly, the commissioner erred in finding that wife failed to trace the $20,500 inheritance deposit, and the trial court's approval of this finding and classification of the bond fund as marital property was plainly wrong.

We also hold that the trial court erred in accepting the commissioner's division of the bond fund. As noted in Part V, the commissioner erred in tracing husband's separate property in the mortgage note based on the costs of improvements rather than value added. Because the commissioner also based his calculation on the erroneous separate property percentage of the note in approximating husband's separate contributions to the bond fund, the commissioner's calculations to divide the fund on this basis were also erroneous. Accordingly, we hold that the trial court's division of the bond fund was erroneous. On remand, the chancellor shall allow Mrs. Hart $20,500 from the fund as her separate property and shall redetermine how the balance shall be distributed in accordance with the subsection (E) factors. To the extent the mortgage note payments are to be reclassified as marital and separate, the chancellor shall apply the correct formula according to our holding in Part V.

Finally, we disagree with wife's contention that the commissioner erred when he approximated the source of contributions to the bond fund by attempting to calculate the net amount of marital rental income deposited to the fund rather than the gross rental receipts received. She claims that because of the extensive commingling of funds in the account, the commissioner could not accurately determine whether marital or separate funds were used to pay for the rental expenses and that his determination of net rental income was speculative. In this

respect, she argues, the commissioner underestimated the amount of funds attributable to marital rental income and thereby overestimated the amount of funds that had been deposited from the mortgage note payments, a substantial part of which the husband was awarded as his separate property. Thus, she contends, the trial court's approval of the commissioner's application of the statutory factors was erroneous.

In reviewing an equitable distribution award on appeal, "we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances presented in each case." Artis v. Artis, 4 Va. App. 132, 137, 354 S.E.2d 812, 815 (1987) (citations omitted). "The court need not quantify or elaborate exactly what weight was given to each of the factors." Taylor v. Taylor, 5 Va. App. 436, 444, 364 S.E.2d 244, 249 (1988). "The judgment of the trial court is presumed to be correct and the party who asserts the contrary is required to overcome the presumption by record proof." Broom v. Broom, 15 Va. App. 497, 504, 425 S.E.2d 90, 94 (1992) (citation omitted).

Here, the wife's primary concern that she was not awarded from this fund her separate property which she inherited has been addressed and should eliminate much of her concern that the husband will receive an undue proportion of the fund as his separate share of the mortgage note payments. Furthermore, the proportion of the fund attributable to separate and marital property from the mortgage payments must also be adjusted on

remand.  On this record, we cannot say the commissioner erred in making his calculation by approximating the amount of net rental income deposited into the bond fund by extrapolating data from the couple's tax forms or by estimating the balance attributable to the mortgage payments.  The process of determining the contributions of each party to the acquisition, care and maintenance of marital property necessarily entails approximation and estimation by the chancellor or commissioner.  We cannot say the commissioner erred when he approximated the rental income by considering the rental expenses claimed on husband's tax forms.

## VII.  CONCLUSION

In summary, we affirm the trial court's partition of the Plantation Point property and designation of the boundary lines.  We reverse the trial court's rulings:  (1) concerning the maintenance costs of the joint easements; (2) distributing the Central Fidelity account as part of the monetary award; (3) determining husband's separate property part of the mortgage note; and (4) classifying and dividing the USAA bond fund.  On remand, the trial court must:  (1) redetermine the parties' responsibilities for the maintenance costs of the joint easements in accordance with our holding in Part III; (2) deduct from the marital estate one-half of the Central Fidelity account assets in accordance with our holding in Part IV; (3) redetermine husband's separate property portion of the mortgage note in accord with our holding in Part V; and (4) reclassify the USAA bond fund taking

into account wife's separate property contribution of her inheritance proceeds as well as the correct separate property percentage of the mortgage note.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>