COURT OF APPEALS OF VIRGINIA

Present:    Judges Elder, Bumgardner and Senior Judge Overton
Argued at Richmond, Virginia


GEORGE THOMAS WEST, JR.

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0075-03-2                      JUDGE LARRY G. ELDER
                                                         OCTOBER 14, 2003
PATRICIA WEST


FROM THE CIRCUIT COURT OF HENRICO COUNTY
George F. Tidey, Judge

        Terrence R. Batzli (Ann Brakke Campfield; Barnes & Batzli, P.C.,
        on briefs), for appellant.

        Murray J. Janus (Bremner, Janus, Cook & Marcus, on brief), for
        appellee.


        George Thomas West, Jr., (husband) appeals from the trial court's decision equitably

distributing the property from his marriage to Patricia West (wife) and calculating the amount

due to wife for the support of the parties' minor daughter.  We hold the trial court erroneously

failed to classify and value certain items of property and considered improper factors in

determining how to divide the property.  Thus, we reverse in part and remand for further

proceedings without reaching husband's claim that the ultimate division of property was an abuse

of discretion.  Based on these errors, we also remand the issue of attorney's fees and costs for

consideration anew in light of the ultimate resolution of the equitable distribution.  Finally, we

hold the trial court did not abuse its discretion in finding that the child care expense claimed by

wife was reasonable and necessary, and we affirm that part of the court's ruling.

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

# I. EQUITABLE DISTRIBUTION

On appeal,

> "we view [the] evidence and all reasonable inferences in the light most favorable to the prevailing party below. . . ."  [T]he trier of fact ascertains [witnesses'] credibility, determines the weight to be given their testimony, and has the discretion to accept or reject any of the [witnesses'] testimony[, in whole or in part].

Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*) (quoting Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)).  An equitable distribution award must be reversed if "[the chancellor] has not considered or has misapplied one of the statutory mandates[] or . . . the evidence fails to support the findings of fact underlying his resolution of the conflict in the equities."  Smoot v. Smoot, 233 Va. 435, 443, 357 S.E.2d 728, 732 (1987).

## A.  CLASSIFICATION AND VALUATION OF PROPERTY

### 1.  Court's Duty to Classify and Value Property

When a court formulates an equitable distribution award, the award "must go beyond mere guesswork.  There must be a proper foundation in the record to support the granting of an award and the amount of the award.  When considering whether to make an award, the court must first classify and value the parties' marital and separate property."  Stumbo v. Stumbo, 20 Va. App. 685, 693, 460 S.E.2d 591, 595 (1995) (citations omitted); see Code § 20-107.3(A) (noting property may be classified as separate, marital, or hybrid).

Here, the trial court formulated a "scheme of distribution" that listed various assets in a column beneath husband's name and various other assets in a column beneath wife's name.  Implicit in the trial court's ruling was that it classified as wholly marital the assets included on the "scheme of distribution" sheet.  Thus, the court complied with the requirement of Code

§ 20-107.3 that it classify the parties' property.[1]  However, before allocating those assets between the parties, the court had a duty to value them.  Here, the trial court expressly stated that it fashioned the equitable distribution award "*just on an asset basis*," without giving any indication that it first valued any of the property, as required by Code § 20-107.3.  (Emphasis added).  The court's failure to make such findings in a case in which the values of the marital portions of multiple items of property were hotly contested was reversible error.  See Stumbo, 20 Va. App. at 693, 460 S.E.2d at 595; see also Brinkley v. Brinkley, 5 Va. App. 132, 137-38, 361 S.E.2d 139, 141 (1987).

### 2.  Motion for Alternate Valuation Date

Code § 20-107.3(A) provides that

> [t]he court shall determine the value of [marital and hybrid] property as of the date of the evidentiary hearing on the evaluation issue.  Upon motion of either party made no less than twenty-one days before the evidentiary hearing the court may, for good cause shown, in order to attain the ends of justice, order that a different valuation date be used.

The trial court, in its November 13, 2002 letter, indicated that "[t]he valuation date was the date of the hearing," thereby denying husband's motion for an alternate valuation date for specified assets.

Husband contends the ends of justice required the court to use a different valuation date because, by using the date of the hearing, "the trial court was, in essence, classifying [husband's post-separation] deposits [into the contested accounts] as marital property."  We disagree.  Even using the date of the hearing as the valuation date for the contested assets, the court had a duty to properly classify those assets. Property acquired by a party after the last separation is presumed to be separate property, although that presumption is rebuttable.  Code § 20-107.3(A); Dietz v.

---

[1] We address the accuracy of some of those classifications *infra* in Part I.A.3.

Dietz, 17 Va. App. 203, 211-12, 436 S.E.2d 463, 468-69 (1993). Thus, absent evidence from wife to the contrary, husband's post-separation contributions to his retirement accounts, his Hunton & Williams capital account, and the Crestar/SunTrust checking account, were his separate property. To the extent that husband submitted evidence of the amount of those contributions, he was entitled to have the trial court classify the accounts as hybrid property, regardless of its denial of his motion to value those accounts as of the date of the parties' separation. Valuing the marital portion of hybrid assets as of the date of separation would have deprived wife of her share of any appreciation in those accounts.

### 3. Classification and Valuation of Specific Items of Property

"All property . . . acquired by either spouse during the marriage . . . is presumed to be marital property in the absence of satisfactory evidence that it is separate property." Code § 20-107.3(A)(2). "A partner in a marriage owes his labor during the marriage to the marital partnership[;] [t]he fruits of that labor, absent express agreement, are marital property." Stainback v. Stainback, 11 Va. App. 13, 24, 396 S.E.2d 686, 693 (1990). Conversely, property acquired by a party after the last separation is presumed to be separate property, although that presumption is rebuttable. Code § 20-107.3(A); Dietz, 17 Va. App. at 211-12, 436 S.E.2d at 468-69.

### a. Wife's Pension

Under the "immediate offset approach" to dividing a pension, the trial court determines the present value of the marital share of the benefits and considers this value in making the monetary award. Torian v. Torian, 38 Va. App. 167, 176, 562 S.E.2d 355, 360 (2002). The party requesting an award under the immediate offset approach bears the burden of proving the present value of the pension. Johnson v. Johnson, 25 Va. App. 368, 375, 488 S.E.2d 659, 662

(1997). The court must determine present value even "[w]here an award of the entire pension is made to the owning spouse." Id. at 374, 488 S.E.2d at 662.

Here, wife asked the court to award her the entire present value of her Virginia Retirement System (VRS) pension and a portion of husband's retirement benefits in an amount that would result in her receiving half the combined value of the two accounts. The court in fact awarded wife the VRS pension. Because the court made no present value finding for the VRS pension, its award of all of that asset to wife via the immediate offset approach was error.

### b. Hong Kong Bank Account

The trial court expressly found that the parties "last cohabited on May 19, 1999." Under husband's testimony, the Hong Kong account was opened with money received after the May 1999 separation. Property acquired by a party after the last separation is presumed to be separate property, although that presumption is rebuttable. Code § 20-107.3(A); Dietz, 17 Va. App. at 211-12, 436 S.E.2d at 468-69. Thus, if the trial court credited husband's testimony, the property was presumed separate because it was acquired after the parties' last separation on May 19, 1999, and wife did not present evidence to rebut the presumption.

Alternatively, even if the trial court rejected husband's testimony, no evidence established when or with what funds husband opened the Hong Kong account, only that the account was opened before the valuation hearing, which occurred after the divorce in these bifurcated proceedings. In the absence of any evidence that the account was opened before the parties separated or that the funds used to open it were attributable in any part to husband's work for employer during the marriage, the trial court lacked authority to classify it as marital. Thus, on the evidence in the record, the trial court's classification of the Hong Kong account as marital was error.

## c. Marital Residence

"[T]he party claiming a separate interest in transmuted property bears the burden of proving retraceability." von Raab v. von Raab, 26 Va. App. 239, 248, 494 S.E.2d 156, 160 (1997). "This process involves two steps: a party must first (1) establish the identity of a portion of hybrid property and (2) directly trace that portion to a separate asset." Rahbaran v. Rahbaran, 26 Va. App. 195, 208, 494 S.E.2d 135, 141 (1997). "If the party claiming a separate interest in the transmuted property proves retraceability, the burden shifts to the other party to prove that the transmutation of the separate property resulted from a 'gift.'" von Raab, 26 Va. App. at 248, 494 S.E.2d at 160.

Per Code § 20-107.3(A)(3)(g), "[n]o presumption of gift arises from the fact that the property was retitled." Theismann v. Theismann, 22 Va. App. 557, 565, 471 S.E.2d 809, 813, aff'd on reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996). The party claiming the existence of a gift must prove by clear and convincing evidence "(1) intention on the part of the donor to make a gift; (2) delivery or transfer of the gift; and (3) acceptance of the gift by the donee." Id. at 566, 471 S.E.2d at 813. If the party claiming a separate interest proves retraceability and the other party fails to prove transmutation of the property by gift, "the Code states that the contributed separate property '*shall* retain its original classification.'" Hart v. Hart, 27 Va. App. 46, 68, 497 S.E.2d 496, 506 (1998) (quoting Code § 20-107.3(A)(3)(d), (e)) (emphasis in Hart).

Here, as in Holden v. Holden, 31 Va. App. 24, 29-30, 520 S.E.2d 842, 845 (1999), the evidence established that husband retraced his contribution to the down payment. Husband testified that he deposited into the parties' SunTrust account $52,000 that he inherited from his father's estate and the couple used almost the entire account balance to make the down payment. Wife conceded as much, arguing only that the evidence established husband intended to make a

gift of that contribution to wife. However, the mere fact that husband and wife were joint owners of the account from which they withdrew funds to purchase the jointly titled residence did not establish that husband intended to make a gift of the funds to wife. Theismann, 22 Va. App. at 565, 471 S.E.2d at 813. Further, neither husband nor wife offered any evidence that husband ever expressed such an intent, either contemporaneously with the transfer of funds or at any other time. Thus, the evidence failed to support the trial court's finding that the amount husband contributed to the down payment had become marital property, and we hold the trial court should have classified as husband's separate property the portion of the value of the marital residence attributable to husband's original $52,000 contribution. On remand, we direct the court to calculate the value of husband's share and to take that value into consideration in fashioning the equitable distribution award.

### d. SunTrust Account

Husband failed to satisfy his burden of retracing the $15,000 inheritance he claimed to have deposited into the parties' SunTrust account in 1994. A court commits reversible error in refusing to classify as separate property a spouse's inheritance where the spouse proves he deposited the inheritance into a joint account from which the parties subsequently made no withdrawals. See Hart, 27 Va. App. at 68, 497 S.E.2d at 506. "Under these circumstances, the Code mandates that [the spouse's] deposit be classified as separate property." Id. at 68, 497 S.E.2d at 507. However, where a spouse makes a deposit of separate funds into a joint account into which

> unspecified sums of marital funds were thereafter deposited and withdrawn . . . , [with] the balance regularly ebbing and flowing for months[,] . . . the identity of [the spouse's] separate funds ha[s] been lost in countless unspecified transactions involving marital funds, resulting in the irreversible transmutation of separate into marital property. Under such circumstances, [a] court [is] unable

> to properly trace and preserve the integrity of [the spouse's] separate property.

Asgari v. Asgari, 33 Va. App. 393, 403, 533 S.E.2d 643, 648 (2000).

Here, assuming the trial court accepted as credible husband's uncontradicted testimony regarding the initial deposit of the inherited funds in 1994, the record does not contain complete statements for that account, and the statements that are in the record--which cover July 2000, June 2001, and March 2002--show deposits into and withdrawals from that account for taxes and other unspecified purposes. Husband admitted on brief that this was the account into which he deposited his income, a marital asset during the marriage, and from which he paid his living expenses and taxes. Thus, the evidence establishes that the account was marital and supports the trial court's implicit finding that husband failed to retrace his separate contribution.

In addition, husband failed to establish the amount of his post-separation contributions to that account and the net earnings attributable to those contributions. Instead, he offered evidence of the balance in the account as of the date of separation, sums allegedly deducted from the account to satisfy marital tax obligations, and an interest rate on the balance at 0.45%. As set out above, he did not offer complete statements for that account. In the absence of complete account information from which the trial court could determine the amount of his post-separation contributions to the account and their earnings, the trial court did not err in failing to classify these sums as husband's separate property.

### e. Husband's Retirement Account

Husband offered evidence of the value of his Hunton & Williams retirement account as of May 1, 1999, January 1, 2001, and January 4, 2002. He offered evidence of contributions and earnings for the year 2001. Husband offered no evidence of the value of that account as of the date of the hearing and no evidence of the amount of post-separation contributions to or withdrawals from that account, made by him or on his behalf, or the earnings thereon during the

portion of 1999 following the separation or for the year 2000 or 2002. In the absence of such evidence, the trial court was unable to calculate the total increase in the value of that account since the date of separation or to determine what portion of the increase was marital property. Due to this lack of evidence, the trial court's failure to classify as husband's separate property his post-separation contributions and their earnings was not error.

### f. Husband's Interest in Hunton & Williams

Husband contends that the trial court's reference in the scheme of distribution to his "interest" in Hunton & Williams establishes it erroneously held he had an ongoing equity interest in the firm. He argues the court should instead have listed his capital account because the evidence established that his capital account was the only law-firm-related asset in which he retained an interest.

We hold the trial court's reference to husband's "interest" in Hunton & Williams does not exclude the possibility that it referred to the value of his capital account rather than his equity partnership interest, which he testified he no longer had. Thus, we cannot conclude that the trial court's reference to husband's "interest" was a rejection of his uncontradicted testimony regarding his partnership status, and we need not consider whether, on this record, such a rejection would have been error.

### g. Personal Property

The trial court was entitled to disbelieve husband's evidence that some of the property still in the marital residence was husband's separate property and to accept wife's representations, via her schedule of marital assets, that the $57,765 of personal property still in the marital residence was marital property. Second, the trial court was not required to distribute the personal property as husband represented the parties had agreed. Husband did not ask wife at the hearing whether she approved of the personal property classification and distribution contained in his

exhibit twelve. Wife did testify that she would allow husband to remove from the marital residence additional items of marital property of which she approved. She also testified, however, that she had asked husband to come to the residence to do so on numerous prior occasions and that he had failed to avail himself of the opportunities she offered.

Further, based on the undisputed values placed on the property by the appraiser and wife's representations via her exhibits, wife had possession of $57,765 of personal property, all of which was marital, and husband had possession of $11,947 of marital personal property. With the additional personal property "adjustment" made by the court in its scheme of distribution, husband received $24,000 more of another marital asset, the Crestar/SunTrust account, than wife received in order to partially compensate him for the disparate division of personal property. As a result, husband received $35,947 in cash and property as compared to wife's retention of $57,765 in property. Although we do not here review the fairness and propriety of the overall award because we remand for reconsideration on other grounds, we hold that the trial court's treatment and division of these particular assets, standing alone, was not an abuse of discretion.

## B. DIVISION OF MARITAL ASSETS

Code § 20-107.3(F) specifically provides that "[t]he court shall determine the amount of any [equitable distribution] award without regard to maintenance and support awarded for either party." See also Reid v. Reid, 7 Va. App. 553, 565, 375 S.E.2d 533, 540 (1989). Thus, the trial court erred in considering as "a significant factor . . . that [wife] would not receive spousal support from [husband]."

Similarly, we hold the trial court erred in considering "the life styles of the parties and their children." Although "the standard of living established during the marriage" is a factor for consideration in assessing a request for spousal support, see Code § 20-107.1(E)(2), the equitable distribution statute contains no similar provision, see Code § 20-107.3(E). As is the case with a

- 10 -

spouse's earning capacity, we hold that the parties' standard of living during the marriage has no relevance to determining how to "distribut[e] . . . the accumulated marital wealth between the marital parties." Reid, 7 Va. App. at 565, 375 S.E.2d at 540.

Accordingly, we hold the court erred in considering the parties' standard of living and earning capacities in fashioning the equitable distribution award.

## II. CHILD CARE EXPENSES

Code § 20-108.2(F) provides that "[a]ny child-care costs incurred on behalf of the child or children due to employment of the custodial parent shall be added to the basic child support obligation. Child-care costs shall not exceed the amount required to provide quality care from a licensed source." In a child support proceeding, "[t]he primary issue before a trial judge is the welfare and best interests of the child, not the . . . personal preference of a parent." Hur v. Dep't of Soc. Servs., 13 Va. App. 54, 60, 409 S.E.2d 454, 458 (1991).

Here, the evidence, viewed in the light most favorable to wife and the parties' child, supported the court's finding that, given the nature of wife's job, "the welfare and best interests" of the parties' fourteen-year-old daughter were served by employing a sitter who could help her with homework, oversee her activities after school and during school vacations, care for her when she became ill, and take her to medical and other appointments as necessary. But for wife's employment, wife would have been available to do these things. Thus, the evidence supported a finding that the contested "child-care costs [were] incurred on behalf of the child or children due to employment of the custodial parent."

We also reject husband's contention that the claimed child care costs are "far in excess of the cost of any reasonable licensed daycare provider for the limited number of hours per day" that the sitter is with the child. Husband's calculations as to the sitter's hourly rate do not appear to take into account wife's testimony that the sitter is with the child for *more than*

- 11 -

two-and-one-half hours per day when the child is sick, when the child has a day off from school, and during the summer months when the child "did not go to school" at all. Husband's calculations also do not take into account expenses incurred by the sitter to drive the child to and from medical appointments and to take her home from school when she is sick. Further, these figures do not take into account any federal or state taxes that wife may be required to pay on the sitter's wages and does not include any expenses for mileage that wife might pay the sitter. Finally, husband offered no evidence of what reasonable licensed daycare would cost.

Thus, the evidence supports the trial court's finding that "[t]he daycare figure is necessary."

III.

We hold that the trial court erroneously failed to classify and value certain items of property and considered improper factors in determining how to divide the property. Thus, we remand for further proceedings without reaching husband's claim that the ultimate division of property was an abuse of discretion. Based on these errors, we also remand the issue of attorney's fees and costs for consideration anew in light of the ultimate resolution of the equitable distribution. Finally, we hold the trial court did not abuse its discretion in finding that the child care expense claimed by wife was reasonable and necessary under Code § 20-108.2(F), and we affirm that part of the court's ruling. Thus, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

Affirmed in part,<br>reversed in part,<br>and remanded.