COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Haley and Senior Judge Bumgardner
Argued at Alexandria, Virginia


STEVEN J. VANWORMER

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0926-05-4                      JUDGE JAMES W. BENTON, JR.
                                                            MAY 23, 2006
PAMELA A. VANWORMER


                  FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                            Robert W. Woolridge, Jr., Judge

            Edward V. O'Connor, Jr., for appellant.

            David M. Levy (Surovell Markle Isaacs & Levy PLC, on brief), for
            appellee.


        Steven VanWormer appeals the trial judge's award of equitable distribution in his divorce

from Pamela VanWormer.  He assigns three errors on appeal:  that the trial judge erred (1) in his

Bradenburg calculation by including payments on the marital residence made post-separation,

(2) by not classifying the rent and rent differential received for the Colorado house as the

husband's separate property, and (3) in failing to rule that the payments on the marital

residence's mortgage from the rental income on the Colorado house were the husband's separate

property.  On cross-appeal, the wife contends that the trial judge erred in classifying the down

payment on the marital home as the husband's separate property.  We hold the trial judge erred

by factoring the post-separation mortgage payments into the Bradenburg calculation.  We also

hold that the record demonstrates no error concerning the other issues raised on appeal.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. Background

Prior to the marriage, the husband bought a house in Colorado in 1986. In 1990, he moved to Los Angeles for a job. During most of that time, the Colorado house was a rental property. The parties married September 18, 1993. According to the husband's testimony, the Colorado house earned rent of $460 a month from 1990 through 1996. In addition, the husband testified he received a monthly "rental differential" payment from his employer, equal to the difference between the rent he paid to live in Los Angeles and the rent earned from the Colorado property.

In March of 1997, the husband sold the Colorado property and deposited the proceeds of the sale into the parties' joint checking account. A week later, the husband withdrew $22,511 from the joint account and made a down payment on the parties' marital residence, a house in Fairfax, Virginia. During the marriage, the parties refinanced the original mortgage on the marital residence, withdrew equity, and borrowed a second loan on the house.

The parties separated October 11, 2002. The husband moved from the marital home, and he later made three payments on the house mortgage. The wife paid the other monthly mortgage payments. Over a year later, the husband filed a bill of complaint for divorce, and the wife filed a cross-bill for divorce. Just before the hearing in November 2004, both parties made large lump-sum payments to reduce the mortgage principal.

At the completion of the evidence, the trial judge found that the down payment on the Colorado house and the reduction of its mortgage prior to the marriage were the husband's separate property. The trial judge also found that payments on the Colorado house mortgage during the marriage were marital property.

In addition, the trial judge found that the down payment on the marital residence was traceable to the sale proceeds of the Colorado house. Therefore, he found that the down payment

on the marital residence was part marital and part separate property. The trial judge also found that the parties had invested a total of $68,626 into the marital house as of the date of the hearing: $22,511 down payment, $31,464 reduction of the original mortgage, and $14,651 reduction of the refinanced mortgage. He did not include the post-separation mortgage payments in this calculation.

Pursuant to an agreement of the parties, the trial judge deducted $45,000 from the equity value of the house on the date of the hearing in order to reimburse the parties for the post-separation lump-sum payments they made just before the hearing. Of the remaining $22,010 post-separation reduction of the mortgage on the marital residence, $21,192 came from the wife's separate funds and $818 came from the husband's separate funds. The trial judge categorized these post-separation payments as separate contributions to the home, factoring them into his determination of the parties' shares in the property under a Bradenburg analysis.

The issues on appeal all challenge the equitable distribution award. Equitable distribution awards are reviewed on appeal under the abuse of discretion standard. We will only reverse the trial judge's award if "'it appears from the record that [the judge] has abused his discretion, that he has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying his resolution of the conflict of the equities.'" Hart v. Hart, 27 Va. App. 46, 53, 497 S.E.2d 496, 449 (1998) (quoting Robinette v. Robinette, 10 Va. App. 480, 486, 393 S.E.2d 629, 633 (1990)).

II. The Bradenburg Calculation on the Marital Home

Contending that the post-separation mortgage payments should not be used in a Bradenburg calculation, the husband points to the Kentucky equitable distribution statute. The husband reasons that our approval of Bradenburg, a Kentucky case, requires us to consider the differences between the Kentucky equitable distribution statute and the Virginia statute in our

application of the Bradenburg formula. He additionally argues that it would be contrary to "public policy" and inequitable to include post-separation payments in the formula, which would result in the wife realizing "a return of $99,831.00 on an investment of $21,192.00 over a two-year period." The wife argues in response that under Virginia law, the primary factor for the trial judge to consider is whether payments are traceable to nonmarital funds. The wife agrees with the husband's analysis of the Kentucky statute but argues it is not persuasive. Citing to unpublished cases, the wife argues that we have "implied" that the post-separation mortgage payments can be included in a Bradenburg calculation.

Under Code § 20-107.3, the trial judge in a divorce proceeding is to both classify and value the property at issue. The dates of classification and valuation are not necessarily the same. The default date of valuation is the date of the hearing. Code § 20-107.3(A). The legislature left the date of classification up to the "determination of the courts," but in "most cases the appropriate date" is that of separation. Price v. Price, 4 Va. App. 224, 231-32, 355 S.E.2d 905, 909 (1987). The purpose of classifying the property as of the date of separation is to allow the trial judge to divide only that property derived from the marital partnership. Brett R. Turner, Equitable Distribution of Property § 5:28, at 427-28 (3d ed. 2005).

In this case, the trial judge chose not to classify the marital home as of the separation date. As a result, the parties' payments made on the monthly mortgage payments after their separation factored into the trial judge's determination of how much each party had separately contributed to the home. We note that the parties agreed, however, that the trial judge would not factor in the lump-sum payments each party made on the mortgage post-separation, instead he returned these sums out of the house equity to the parties.

To allow post-separation mortgage reduction to affect the classification of the marital residence would allow the spouse in better financial standing to skew classification of the marital

home in his or her favor. The spouse with more financial resources could disproportionately reduce the mortgage, simultaneously increasing his or her separate share of the property. We conclude that this result is one not contemplated as an appropriate result under the statutory scheme. Thus, the trial judge erred by not classifying the home as of the parties' separation.

In addition, the trial judge erred mathematically in incorporating the post-separation payments into the Bradenburg formula. In determining the parties' "total investment" in the marital home, the trial judge did not include their post-separation payments. However, he *did* include those payments in computing the parties' separate contributions.

The wife argues that another error raised by the husband was not preserved for appeal. The wife notes a separate error but argues that it was immaterial. On remand, the trial judge should reconsider these calculations.

### III. The Colorado Property

The husband contends that the trial judge erred by not crediting him for the rent and rent differential from the Colorado house as his separate property. He argues that the rental income was his separate property under Code § 20-107.3(A)(1) and the rent differential payments were his separate property because they were not attributable to the personal efforts of either party. The wife responds that the rental income was marital property because it was income derived from marital property (the Colorado house). In addition, she argues that the rental differential payments were also marital property because they were a form of compensation for his employment.

Code § 20-107.3(A)(1) provides in pertinent part, that "[i]ncome received from separate property during the marriage is separate property if not attributable to the personal effort of either party." In essence, the husband argues that the rent income and differential are his separate property because they are derived from the Colorado house. Consequently, the husband

argues, because the rent proceeds on the Colorado house were more than the principal payments on the mortgage, the evidence proved he paid the mortgage from the rent proceeds. He argues the mortgage reduction was attributable to his separate property; thus the Colorado house was entirely his separate property. The wife responds that they paid the mortgage payments on the Colorado property out of the marital funds in the joint checking account. Although the husband deposited the rental income into the joint account, she contends he did not sufficiently trace the mortgage payments to the rent deposits. The wife also testified that rent was inconsistently earned and never covered the monthly mortgage payment of $1,000.

The trial judge did not specifically find that the rent income and rent differential benefit were marital property. He only found that the reduction of the mortgage before the marriage created the husband's separate property and the reduction of the mortgage during the marriage created marital property.

The evidence proved the rent income was deposited in the couple's joint checking account during the marriage. The mortgage was paid out of that joint account. The rent differential payment of $700 a month was deposited into the joint account along with the husband's employment income. During the marriage, the common thread between the Colorado mortgage payments and the rent proceeds received was the joint checking account. Neither party disputes that the joint account was a marital asset.

Under the Bradenburg formula, non-marital contribution is "'the equity in the property at the time of marriage, plus any amount expended after marriage by either spouse from traceable nonmarital funds in the reduction of mortgage principal, and/or the value of improvements made to the property from such nonmarital funds.'" Keeling v. Keeling, 47 Va. App. 484, 490-91, 624 S.E.2d 687, 689-90 (2006) (quoting Hart, 27 Va. App. at 65, 497 S.E.2d at 505). By statute, however, "[w]hen marital property and separate property are commingled by contributing one

- 6 -

category of property to another, resulting in the loss of identity of the contributed property, the classification of the contributed property shall be transmuted to the category of property receiving the contribution." Code § 20-107.3. Such loss of identity occurs "'unless the contributed property is retraceable and not a gift.'" Gilman v. Gilman, 32 Va. App. 104, 122, 526 S.E.2d 763, 772 (2000) (quoting Barker v. Barker, 27 Va. App. 519, 531, 500 S.E.2d 240, 246 (1998)).

"'In order to trace the separate portion of hybrid property . . . a party must (1) establish the identity of a portion of hybrid property and (2) directly trace that portion to a separate asset." Id. Thus, for the husband to prove that the mortgage reduction on the Colorado house during the marriage was his separate property, he must have sufficiently shown at trial that (1) the mortgage payments were traceable to the rent proceeds, (2) the rent proceeds were his separate property, and (3) the rent proceeds were not commingled with the rest of the funds in the joint account. The husband testified that the house generated approximately $460 a month in rent, but the wife testified that for some of the time relatives or friends lived in the house for free. The bank statement records did not clarify how much the house generated as rent because the rent was often deposited in combination with other checks. The monthly mortgage payment for the Colorado house was $1,000. These facts do not conclusively trace the mortgage payments to the rent proceeds. The trial judge, therefore, did not abuse his discretion by declining to find that the husband paid the mortgage on the Colorado house out of his separate funds.

The husband's argument that the rent income was his separate property is unpersuasive because he failed to prove the Colorado house was his separate property. This was the foundation on which his argument rested. See Code § 20-107.3(A)(1). The rent differential presents a more complex issue, because it is connected both to the husband's employment and to ownership of the Colorado house. Employment income earned during the marriage is considered

- 7 -

marital property, thus the employment aspect of the benefit suggests it is marital.  See Amburn v. Amburn, 13 Va. App. 661, 664, 414 S.E.2d 847, 849 (1992).  In addition, as with the rent income, the husband's failure to establish his separate ownership of the house negates his claim that the rent differential payments are his separate property as derivations of his ownership of the house.

IV.  The Down Payment on the Marital Home

The wife contends that the down payment on the marital home was entirely marital property because the husband wrote the check for the down payment out of the parties' joint checking account.  She argues that the proceeds from the Colorado house sale lost its separate identity after being deposited in the joint account and the husband did not adequately trace the down payment to his separate funds.  Alternatively, she argues that the husband gifted the money to her.  The husband counters that he adequately traced the down payment to the proceeds of the Colorado property and he did not gift the money to the wife by merely depositing it in their joint account.

As discussed above, when different types of property are commingled, the contributed property transmutes into the category of the contributed-to property, unless the contributed property is retraceable and not a gift.  See Code § 20-107.3; Gilman, 32 Va. App. at 122, 526 S.E.2d at 772.  For the trial judge to find that the down payment on the marital home was traceable to the proceeds of the sale of the Colorado house, the husband must have shown that even though the sale proceeds were deposited in the marital checking account, they were specifically used for the down payment on the marital home.

The husband testified that the couple planned to use the deposit from the Colorado house for their down payment.  He explained that because the dates for closing on the Colorado house and the marital home were so close in time, they worried that they may not get the funds from

the Colorado house in time and had a contingency plan for how to pay the down payment if this occurred. A week lapsed between the deposit of the sale proceeds and the check for the down payment. The balance at the beginning of that week was significantly less than the amount of the down payment. During that time, the parties withdrew large sums of money, but did not make any large deposits.

The husband presented adequate evidence to trace the down payment to the Colorado house proceeds. The husband's testimony, the short time window between the deposit and the withdrawal, and the lack of other large deposits into the joint account sufficiently traced the down payment to the sales proceeds from the Colorado house. The trial judge, therefore, did not abuse his discretion in finding that the proceeds paid the down payment on the marital home.

If one party successfully proves retraceability, the burden shifts to the other party to prove that the separate property transmuted into marital property as the result of a gift. Von Raab v. Von Raab, 26 Va. App. 239, 248, 494 S.E.2d 156, 160 (1997). To find that a gift occurred, the party must have shown: "(1) the intention on the part of the donor to make a gift; (2) delivery or transfer of the gift; and (3) acceptance of the gift by the donee." Rowe v. Rowe, 24 Va. App. 123, 137, 480 S.E.2d 760, 766 (1997). Here, the only element disputed by the parties is that of the husband's intent.

Although the home was jointly titled, no presumption of gift arises from that fact alone. See id. The only fact that the wife raises to evidence the husband's donative intent is that he deposited the Colorado property sale proceeds into the joint checking account, "making no attempts to segregate any of the funds." This argument fails for two reasons. First, depositing the money into the joint account fulfills the element of delivery, a different element than that of donative intent. Second, the statutory provision for retracing commingled property belies the

proposition that commingling different classifications of property in and of itself is enough to demonstrate donative intent.

V.

For these reasons, we affirm in part, reverse in part, and remand. The trial judge erred in his classification of the marital home, but did not err in his classifications of the Colorado house or the down payment on the marital home. The trial judge abused his discretion in the classification of the marital home by including the post-separation mortgage payments in the determination of separate contributions to the home. However, the trial judge acted appropriately in finding that the reduction of the mortgage on the Colorado house was marital property and that the down payment on the marital home, which was traceable to the Colorado house proceeds, was partially the husband's separate property.

<u>Affirmed, in part,
reversed, in part,
and remanded.</u>