# JOE M. LEAKE, ET AL.

## V.

# WALTER C. CASATI, ET AL.

Record No. 850253

January 15, 1988

Present: All the Justices

*Francis L. Buck (Buck, Hogshire & Gouldman, Ltd.,* on briefs), for appellants.

*Edward R. Slaughter, Jr.; George R. St. John, County Attorney (Matt S. Nydell; James B. Murray, Jr.; Frederick W. Payne, Deputy County Attorney, Slaughter & Redinger, P.C.,* on briefs), for appellees.

RUSSELL, J., delivered the opinion of the Court.

This appeal from a decree of sale in a partition suit presents the question whether a chancellor, in deciding whether the land may conveniently be partitioned in kind, is controlled by the provisions of local ordinances regulating the subdivision of land.

The land in question is a long, narrow, irregularly shaped tract containing approximately 190 acres, lying east of Charlottesville. Its southern boundary is the Rivanna River, and its only access to

the state highway system is 25 feet of road frontage at its northeast corner. The tract is a mixture of woods and farm land and contains a large pond.

Members of the Leake family have used the property for many years for hunting and fishing. Philip Leake, who owned the property from 1968 until his death in 1978, is buried on the property. Subsequent conveyances vested the title in Philip's brothers, John and Joe, as tenants in common. In 1983, John Leake conveyed his one-half undivided interest to Walter C. Casati, the owner of a 1000-acre tract contiguous to and west of the 190-acre tract.

Casati made several efforts to purchase Joe Leake's interest, but Leake advised him that he did not wish to sell at any price and that he had sentimental attachment to the land. He wished only to retain his share of the property as a place to hunt and fish. Casati brought this suit for partition, offering to take full title to the entire tract and to pay the value of Leake's interest. Leake, who lacked the financial means to purchase Casati's interest, asked for a division of the property in kind.

The cause was referred to a commissioner in chancery, who took evidence and reported to the court that partition in kind was neither practicable nor convenient. He recommended that the court accept Casati's offer to take the whole property and to pay one-half the fair market value to Leake. Leake filed timely exceptions.

After considering the exceptions, the chancellor ruled, in a letter opinion, that the commissioner's determination would be correct if the Albemarle County subdivision ordinance were to be applicable to a division of the land in kind, because the effects of the ordinance would be so onerous as to render partition in kind impracticable. On the other hand, the chancellor was of the view that the evidence would not support the commissioner's finding if the subdivision ordinance were inapplicable; in that event, the property might conveniently be partitioned in kind.[1] The court di-

---

[1] The Albemarle County Subdivision Ordinance (County Code Ch. 18) provides, in § 18-2, that the ordinance applies to any division of land into two or more lots such that any one lot fronts less than 250 feet on a road which is part of the State Highway Secondary System. The effect of the ordinance would be to subject the new lots to such requirements as the Board of Supervisors might prescribe with respect to streets, utility easements, drainage easements, park sites, school sites, public reservations, bonding requirements, flood control, sewers, sanitary systems, water systems, erosion control, fire protection, monuments, curbs, gutters, sidewalks, and landscaping.

rected counsel to take appropriate steps to make Albemarle County a party to the suit in order that the court's subsequent determination of the effect of the ordinance would bind the county.

Leake made the county a party by cross-bill. The county filed an answer asserting that the subdivision ordinance would apply to any division of the land made by the court. The chancellor then considered memoranda of law filed by all parties and concluded that the subdivision ordinance would apply to any division of the land in kind ordered by the court, and that a division of the land in kind was therefore impracticable.[2] The court overruled Leake's exceptions, confirmed the commissioner's report, and ordered sale of Leake's interest to Casati for the sum of $122,601.60. We granted Leake an appeal.

The partition of property *in kind* is an ancient heritage of equity jurisdiction, existing in the common law of England independently of statute. *Leonard* v. *Boswell, Executrix*, 197 Va. 713, 718, 90 S.E.2d 872, 875 (1956). By contrast, the court's power to decree a sale in lieu of division in kind is relatively new and is carefully limited.

> [T]he court has no right to decree a sale . . . unless it finds, first, that partition in kind cannot be conveniently made; and, second, that the interest of the parties owning the land will be promoted by a sale. These two requisites are conditions imposed by the statute which alone confers upon a court of equity the power to make a sale at all. They are important and indispensable conditions. The statute is an innovation upon the common law, taking away from the owner the right to keep his freehold, and converting his home into money. That must not be done except in cases of imperious necessity. . . . Therefore it would be at variance with fundamental and basic principles to say the Legislature intended to authorize a sale, instead of a division, for any light or trivial

---

[2] Casati argues on appeal that the issue of the applicability of the subdivision ordinance is moot because the commissioner in chancery suggested in his report that other factors might make partition in kind inconvenient, and that the chancellor's final decree confirmed the commissioner's report. We do not agree. The court's letter opinion and final decree both make clear that the applicability of the ordinance was the sole factor governing the confirmation of the commissioner's report. Accordingly, we will treat it as the dispositive question on appeal.

cause. So sacred is the right of property, that to take it from one man and give it to another for private use is beyond the power of the state itself, even upon payment of full compensation. The *jus publicum* alone authorizes the conversion of the citizen's property into money without his consent.

*Cauthorn* v. *Cauthorn*, 196 Va. 614, 620, 85 S.E.2d 256, 259 (1955), *quoting Croston* v. *Male, et al.*, 56 W.Va. 205, 210, 49 S.E. 136, 137-138 (1904).

 Courts of equity in Virginia are cautious in depriving a landowner of his freehold and converting it into money over his objection. We recently held in *Sensabaugh* v. *Sensabaugh*, 232 Va. 250, 349 S.E.2d 141 (1986), decided after entry of the decree below, that the question whether a division in kind is convenient is primary; that the question whether the interests of the parties will be promoted by a sale is secondary. The party seeking a sale has the burden of proving that partition in kind *cannot* conveniently be made before the court would have authority to order a sale. 232 Va. at 256-258, 349 S.E.2d at 145. Even evidence that the property would be less valuable if divided was held "insufficient to deprive a co-owner of his 'sacred right' to property." 232 Va. at 258, 349 S.E.2d at 146.

 Against that background, we turn to the issues in the present appeal. The current statutory scheme governing the subdivision of land is found in Title 15.1, Chapter 11, Article 7 of the Code of Virginia, 1950, as amended. Code § 15.1-465 requires each county and city to adopt a subdivision ordinance. Code § 15.1-466 prescribes the content of such ordinances. Code § 15.1-473 provides, in pertinent part: "After the adoption of a subdivision ordinance in accordance with this chapter . . . [n]o *person* shall subdivide land without . . . fully complying with the provisions of this article and of such ordinance." (Emphasis added). Subsequent provisions provide for the assessment of fines against "[a]ny *person* violating the foregoing provisions. . . ." Code § 15.1-473(d) (emphasis added).

Leake contends that the court is not a "person" upon whom the foregoing statutes could operate, but that it is instead an independent "body of government organized for the public administration of justice." Casati and the county reply that even if the court is not a "person," its operations in a partition suit are merely the accomplishment of acts which the landowners could do for them-

selves if they were in agreement. Thus, the argument runs, the court is simply acting on behalf of private "persons" who are themselves subject to the ordinance. The county further argues that even if the court is not a "person" affected by the ordinance, the clerk of the court is such a "person," and that the clerk would be in violation of the subdivision ordinance if he should admit to record a deed or plat effecting a division of land that did not comply with the ordinance, even if the court ordered such a recordation. Leake responds that any such interpretation would violate constitutional separation-of-powers principles.

■ We do not reach the constitutional question Leake raises. It is sufficient for us to note that the legislature will not be deemed, by implication, to deprive the courts of their traditional equity powers to administer justice between private parties. *See Porter* v. *Warner Co.*, 328 U.S. 395, 398 (1946). Our attention has been drawn to no express legislative enactment purporting to limit or abolish the powers of courts of equity to partition land in kind, and therefore no constitutional question is presented. We conclude that the power of a court of equity to effect partition in kind is unaffected by statutes and ordinances regulating the subdivision of land.

■ We further reject the county's contention that even if the court is unaffected by the subdivision ordinance, the clerk of the court is subject to it. It is axiomatic that the judicial power of the court extends to its officers and to all others acting pursuant to its lawful orders. *See Robinson* v. *Commonwealth*, 186 Va. 992, 996, 45 S.E.2d 162, 163 (1947).

■ The county further argues that if a local subdivision ordinance is inapplicable to a partition of land ordered by the court, then "logically, so must be the zoning, soil erosion control and other development-oriented regulatory ordinances." Such a result, says the county, would be chaotic, and would lead to collusive suits to circumvent such ordinances. The county states a *non-sequitur*. Even though the court's power to order a division of land is unaffected by a subdivision ordinance, it does not follow that those who become owners of the resulting parcels will be immune to valid laws regulating land *use*.

■ Leake concedes, and we agree, that zoning and other valid land-use ordinances and statutes continue to apply to partitioned land. Thus, for example, while it would be within the court's power to partition land into parcels too small to meet the mini-

mum lot size required by a zoning ordinance, the ordinance would prohibit any effective *use* of such lots after the division had been made. Thus, it is unlikely that the court would find such a division "convenient," or, indeed, that any party litigant would seek such a division.

In the case before us, there is no evidence that a division in kind would result in parcels which would be unusable because of any land-use laws. Indeed, the court found that a division in kind would be both convenient and practicable if such a division were not controlled by the subdivision ordinance. Because we hold the subdivision ordinance inapplicable, the case is controlled by the rule in *Sensabaugh*: if the primary question (whether the land can conveniently be divided in kind) is answered affirmatively, the court has no authority to order a sale. Because that is the situation here, we will reverse the decree and remand the cause for further proceedings consistent with this opinion.

*Reversed and remanded.*