599 S.E.2d 754

**ARK LAND COMPANY, a Delaware Corporation, Plaintiff Below, Appellee,**

v.

**Rhonda Gail HARPER, Edward A. Caudill, Rose M. Thompson, Edith D. Kitchen, Therman R. Caudill, John A. Caudill, Jr., Tammy Willis, and Lucille M. Miller, Defendants Below, Appellants.**

No. 31549.

Supreme Court of Appeals of
West Virginia.

Submitted March 31, 2004.

Decided May 7, 2004.

Concurring and Dissenting Opinion of Chief
Justice Maynard July 2, 2004.

Maynard, C.J., concurred in part, dissented in part, and filed opinion.

John W. Barrett, Charleston, John F. Loehr, Charlottesville, VA, for Appellants.

John Philip Melick, Jackson Kelley, PLLC, Charleston, for Appellee.

DAVIS, Justice:

This is an appeal by Rhonda Gail Harper, Edward Caudill, Rose M. Thompson, Edith D. Kitchen, Therman R. Caudill, John A. Caudill, Jr., Tammy Willis, and Lucille M. Miller (hereinafter collectively identified as the "Caudill heirs"), appellants/defendants below, from an order of the Circuit Court of Lincoln County. The circuit court's order authorized a partition and sale of real property jointly owned by the Caudill heirs and Ark Land Company (hereinafter referred to as "Ark Land"), appellee/plaintiff below. Here, the Caudill heirs contend that the legal precedents of this Court warrant partitioning the property in kind, not a sale. After a careful review of the briefs and record in this

case, we agree with the Caudill heirs and reverse the circuit court.

## I.

### FACTUAL AND PROCEDURAL HISTORY

This is a dispute involving approximately 75 acres of land situate in Lincoln County, West Virginia. The record indicates that "[t]he Caudill family has owned the land for nearly 100 years." The property "consists of a farmhouse, constructed around 1920, several small barns, and a garden[.]" Prior to 2001, the property was owned exclusively by the Caudill family. However, in 2001 Ark Land acquired a 67.5% undivided interest in the land by purchasing the property interests of several Caudill family members. Ark Land attempted to purchase the remaining property interests held by the Caudill heirs, but they refused to sell. Ark Land sought to purchase all of the property for the express purpose of extracting coal by surface mining.

After the Caudill heirs refused to sell their interest in the land, Ark Land filed a complaint in the Circuit Court of Lincoln County in October of 2001.[1] Ark Land filed the complaint seeking to have the land partitioned and sold. The circuit court appointed three commissioners, pursuant to W. Va. Code § 37-4-3 (1957) (Repl. Vol. 1997), to conduct an evidentiary hearing. The com-

1. An amended complaint was subsequently filed.

2. Ark Land also objected to calculations involving the distribution of monies to the Caudill heirs after the property was sold.

3. On February 26, 2003, a special commissioner filed a report indicating that the property was purchased by Ark Land for $500,000, and that a deposit of $50,000 was tendered.

4. We have been compelled to construe the proceedings before the circuit court as a bench trial. The record does not disclose either party moving for summary judgment, nor does any order issued by the circuit court indicate that it was reviewing the dispositive issues in the posture of a summary judgment motion. The case was presented to the circuit court based upon objections to the report of the special commissioners. The circuit court held a hearing in which it allowed witnesses to be called and other evidence to be introduced. Consequently, we deem the disposition below to be that of a judgment

missioners subsequently filed a report on August 19, 2002, wherein they concluded that the property could not be conveniently partitioned in kind.

The Caudill heirs objected to the report filed by the commissioners.[2] The circuit court held a *de novo* review that involved testimony from lay and expert witnesses. On October 30, 2002, the circuit court entered an order directing the partition and sale of the property. On January 7, 2003 the circuit court entered an "agreed order" that permitted the property to be sold, with a deposit of $50,000 being made, pending an appeal by the Caudill heirs.[3] The circuit court entered an order on February 5, 2003, certifying that its October 30, 2002, order was a final order under Rule 54(b) of the West Virginia Rules of Civil Procedure. From this ruling the Caudill heirs appealed.

## II.

### STANDARD OF REVIEW

■ This matter was prosecuted as a bench trial.[4] In that regard, our standard of review was set out in syllabus point 1 of *Public Citizen, Inc. v. First National Bank in Fairmont*, 198 W.Va. 329, 480 S.E.2d 538 (1996), as follows:

entered in a bench trial. *See Kopelman and Assocs., L.C. v. Collins*, 196 W.Va. 489, 494 n. 6, 473 S.E.2d 910, 915 n. 6 (1996) (" '[W]e are not bound by the label employed below, and we will treat the [matter] as one made pursuant to' the most appropriate rule." (quoting *Murphy v. Smallridge*, 196 W.Va. 35, 36 n. 4, 468 S.E.2d 167, 168 n. 4 (1996))).

It should also be noted that generally there is no right to a jury trial in a partition proceeding. This is because at common law a partition proceeding was heard in a court of equity. "Where . . . equity exercised jurisdiction in a certain matter, the provision of the constitution guarantying trial by jury does not relate to or give right to trial by jury in suits in equity involving such matter." Syl. pt. 7, *Davis v. Settle*, 43 W.Va. 17, 26 S.E. 557 (1896). *See also Bishop Coal Co. v. Salyers*, 181 W.Va. 71, 77, 380 S.E.2d 238, 244 (1989) ("Suits in equity were tried without juries."); *Marthens v. B & O R. Co.*, 170 W.Va. 33, 38 n. 2, 289 S.E.2d 706, 712 n. 2 (1982) ("[T]hose issues heretofore decided in equity should today be tried to the judge alone.").

In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a de novo review.

This Court has also made clear that,

[t]he deference accorded to a circuit court sitting as factfinder may evaporate if upon review of its findings the appellate court determines that: (1) a relevant factor that should have been given significant weight is not considered; (2) all proper factors, and no improper factors, are considered, but the circuit court in weighing those factors commits an error of judgment; or (3) the circuit court failed to exercise any discretion at all in issuing its decision.

Syl. pt. 1, *Brown v. Gobble*, 196 W.Va. 559, 474 S.E.2d 489 (1996). With due consideration for these standards, we proceed to analyze the issue presented for review.

## III.

## DISCUSSION

The dispositive issue is whether the evidence supported the circuit court's conclusion that the property could not be conveniently partitioned in kind, thus warranting a partition by sale. During the proceeding before the circuit court, the Caudill heirs presented expert testimony by Gary F. Acord, a mining engineer. Mr. Acord testified that the property could be partitioned in kind. Specifically, Mr. Acord testified that lands surrounding the family home did not have coal deposits and could therefore be partitioned from the remaining lands. On the other hand, Ark Land presented expert testimony which indicated that such a partition would entail several million dollars in additional costs in order to mine for coal.

■ We note at the outset that "[p]artition means the division of the land held in cotenancy into the cotenants' respective fractional shares. If the land cannot be fairly divided, then the entire estate may be sold and the proceeds appropriately divided." 7 Powell on Real Property, § 50.07[1] (2004). It has been observed that, "[i]n the United States, partition was established by statute in each of the individual states. Unlike the partition in kind which existed under early common law, the forced judicial sale was an American innovation." Phyliss Craig–Taylor, *Through a Colored Looking Glass: A View of Judicial Partition, Family Land Loss, and Rule Setting*, 78 Wash. U.L.Q. 737, 752 (2000). This Court has recognized that, by virtue of W. Va.Code § 37–4–1 *et seq.*, "[t]he common law right to compel partition has been expanded by [statute] to include partition by sale." Syl. pt. 2, in part, *Consolidated Gas Supply Corp. v. Riley*, 161 W.Va. 782, 247 S.E.2d 712 (1978).[5] *See also* Syl. pt. 1, *Croston v. Male*,

---

**5.** All jurisdictions provide for partition in kind or by sale. *See* Ala.Code § 35–6–57 (Law. Co-op. 1991); Alaska Stat. tit. 9, § 09.45.290 (Lexis 2000); Ariz.Rev.Stat. Ann. § 12–1218 (West 2003); Ark. Stat. Ann. § 18–60–420 (Lexis 2003); Cal.Civ.Proc.Code § 872.820 (West 1980); Colo. Rev.Stat. § 38–28–107 (Bradford 2002); Conn. Gen.Stat. Ann. § 52–500 (West 1991); Del.Code Ann. tit. 25, § 729 (Michie 1989); D.C.Code Ann. § 16–2901 (Lexis 2001); Fla. Stat. Ann. § 64.071 (West 1997); Ga.Code Ann. § 44–6–166.1 (Michie 1991); Haw.Rev.Stat. § 668–7 (1993); Idaho Code § 6–512 (Lexis 1998); 735 Ill. Comp. Stat. § 5/17–101 (West 2003); Ind.Code Ann § 32–17–4–12 (Lexis 2002); Iowa Code Ann. Rule 1.1201 (West 2002); Kan. Stat. Ann. § 60–1003 (1994); Ky.Rev.Stat. Ann. § 389A.030 (Lexis 1999); La. Stat. Ann. Civ.Code art. 1336 (West 2000); Me.Rev.Stat. Ann. tit. 18–A, § 3–911 (West 1998); Md. Real Prop.Code Ann. § 14–107 (Lexis 2003); Mass. Gen. Laws Ann. ch. 241, § 31 (West 1988); Mich. Comp. Laws § 600.3332 (West 2000); Minn.Stat. Ann. § 558.14 (West 2000); Miss.Code Ann. § 11–21–27 (West 1999); Mo. Ann. Stat. § 528.340 (Vernon 1953); Mont.Code Ann. § 70–29–202 (West 2003); Neb.Rev.Stat. § 25–2181 (1995); Nev. Rev.Stat. § 39.120 (2003); N.H.Rev.Stat. Ann. § 547–C:25 (Michie 1997); N.J. Stat. Ann. § 2A:56–2 (West 2000); N.M. Stat. Ann. § 42–5–7 (Michie 1978); N.Y. Real Prop. Acts. Proc. Law § 922 (West 1979); N.C. Gen.Stat. § 46–22 (Lexis 2003); N.D. Cent.Code § 32–16–12 (Michie 1996); Ohio Rev.Code Ann. § 5307.09 (Anderson 1989); Okla. Stat. Ann. tit. 12, § 1509 (West 1993); Or.Rev.Stat. § 105.245 (2003); Pa. Cons. Stat. Ann., R. Civ. Pro. Rule 1558 (West 2002); R.I. Gen. laws § 34–15–16 (Michie 1995); S.C.Code Ann. § 15–61–50 (Law. Co-op. 1977); S.D. Codified Laws Ann. § 21–45–28 (Michie

56 W.Va. 205, 49 S.E. 136 (1904) ("But for the statute authorizing it, a sale of real estate could not be decreed in a suit for partition thereof.").

■ Partition by sale, when it is not voluntary by all parties, can be a harsh result for the cotenant(s) who opposes the sale. This is because " '[a] particular piece of real estate cannot be replaced by any sum of money, however large; and one who wants a particular estate for a specific use, if deprived of his rights, cannot be said to receive an exact equivalent or complete indemnity by the payment of a sum of money.' " *Wight v. Ingram–Day Lumber Co.,* 195 Miss. 823, 17 So.2d 196, 198 (1944) (quoting *Lynch v. Union Inst. for Savings,* 159 Mass. 306, 34 N.E. 364, 364–365 (1893)). Consequently, "[p]artition in kind ... is the preferred method of partition because it leaves cotenants holding the same estates as before and does not force a sale on unwilling cotenants." Powell, § 50.07[4][a]. The laws in all jurisdictions "appear to reflect this longstanding principle by providing a presumption of severance of common ownership in real property by partition in-kind[.]" Craig–Taylor, 78 Wash. U.L.Q. at 753. "Thus, partitioning sale statutes should be construed narrowly and used sparingly because they interfere with property rights." John G. Casagrande, Jr., *Acquiring Property Through Forced Partitioning Sales: Abuses and Remedies,* 27 Boston C.L. Rev. 755, 775 (1986). *See also* Syllabus, in part, *Smith v. Greene,* 76 W.Va. 276, 85 S.E. 537 (1915) ("The right to a partition of real estate in kind, as required at the common law, cannot be denied, where demanded, unless it affirmatively appears upon the record that such partition cannot conveniently be made[.]").

■ In syllabus point 3 of *Consolidated Gas Supply Corp.,* this Court set out the following standard of proof that must be established to overcome the presumption of partition in kind:

By virtue of W. Va.Code § 37-4-3, a party desiring to compel partition through sale is required to demonstrate [ (1) ] that the property cannot be conveniently partitioned in kind, [(2)] that the interests of one or more of the parties will be promoted by the sale, and [(3)] that the interests of the other parties will not be prejudiced by the sale.[6]

(Footnote added). In its lengthy order requiring partition and sale, the circuit court addressed each of the three factors in *Consolidated Gas Supply Corp.* as follows:

(14) That upon the Court's review and consideration of the entire record, even after the [Caudill heirs'] expert witness testified, the Court has determined that it is clearly evident that the subject property's nature, character, and amount are such that it cannot be conveniently, (that is "practically or justly") partitioned, or divided by allotment among its owners. Moreover, it is just and necessary to conclude that such a proposal as has been made by the [Caudill heirs], that of allotting the manor house and the surrounding "bottom land" unto the [Caudill heirs], cannot be affected without undeniably prejudicing [Ark Land's] interests, in violation of the mandatory provisions of Code § 37–4-3; and,

(15) That while its uniform topography superficially suggests a division-in-kind, as proposed by Mr. Acord, the access road, the bottom lands and the relatively flat home site is, in fact, integral to establish-

---

1987); Tenn.Code Ann. § 29–27–201 (Lexis 2000); Tex.Code Ann. Property § 23.001 (West 2000); Utah Code Ann. § 78–39–12 (Lexis 2002); Vt. Stat. Ann. tit. 12, § 5174 (Lexis 2002); Va. Code Ann. § 8.01–83 (Lexis 2000); Wash. Rev. Code Ann. § 7.52.080 (West 1992); Wis. Stat. Ann. § 842.11 (West 1994); Wyo. Stat. § 1–32–109 (Lexis 2003).

**6.** The relevant part of W. Va.Code § 37-4-3 reads as follows:

When partition cannot be conveniently made, the entire subject may be allotted to any party or parties who will accept it, and pay therefor to the other party or parties such sum of money as his or their interest therein may entitle him or them to; *or in any case in which partition cannot be conveniently made, if the interests of one or more of those who are entitled to the subject, or its proceeds, will be promoted by a sale of the entire subject, or allotment of part and sale of the residue, and the interest of the other person or persons so entitled will not be prejudiced thereby,* the court ... may order such sale[.]

(Emphasis added).

ing the fair market value of the subject property in its entirety, as its highest and best use as mining property, as shown by the uncontroverted testimony of [Ark Land's] experts Mr. Morgan and Mr. Terry; and,

(16) That from a review of the Commissioners' Report, it indicates that sale of the subject property will promote the interests of [Ark Land], "but may prejudice the best interest of the [Caudill heirs]." Obviously, from the legal principles and the reviewing standards set out above, the "best interests" of either party is not the standard upon which the Court must determine these issues. In that respect, it is undisputed that the remaining heirs, that are [the Caudill heirs] herein, do not wish to sell, or have the Court sell, their interests in the subject property, solely due to their sincere sentiment for it as the family's "home place". Other family members, however, did not feel the same way. Given the equally undisputed testimony of [Ark Land's] experts, it is just and reasonable for the Court to conclude that the interests of all the subject property's owners will not be financially prejudiced, but will be financially promoted, by sale of the subject property and distribution among them of the proceeds, according to their respective interests. The subject property's value as coal mining property, its uncontroverted highest and best use, would be substantially impaired by severing the family's "home place" and allotting it to them separately. Again, the evidence is not only a preponderance, but unrebutted, that Mr. Acord's proposal would greatly diminish the value of the subject property. Accordingly, the Court does hereby conclude as a matter of law that the subject property should be sold as a whole in its entirety, and that it cannot be partitioned in kind by allotment of part and a sale of the residue.

■ We are troubled by the circuit court's conclusion that partition by sale was necessary because the economic value of the property would be less if partitioned in kind. We have long held that the economic value of property *may* be a factor to consider in determining whether to partition in kind or to force a sale.

"Whether the aggregate value of the several parcels into which the whole premises must be divided will, when distributed among, and held in severalty by, the different parties, be materially less than the value of the same property if owned by one person, is a fair test by which to determine whether the interests of the parties will be promoted by a sale."

Syl. pt. 6, *Croston v. Male,* 56 W.Va. 205, 49 S.E. 136. However, our cases *do not* support the conclusion that economic value of property is the exclusive test for determining whether to partition in kind or to partition by sale. In fact, we explicitly stated in *Hale v. Thacker,* 122 W.Va. 648, 650, 12 S.E.2d 524, 526 (1940), "that many considerations, other than monetary, attach to the ownership of land, and courts should be, and always have been, slow to take away from owners of real estate their common-law right to have the same set aside to them in kind." *See also Wilkins v. Wilkins,* 175 W.Va. 787, 791, 338 S.E.2d 388, 392 (1985) (per curiam) ("Prejudice is not measured solely in monetary terms."(citing *Vincent v. Gustke,* 175 W.Va. 521, 336 S.E.2d 33 (1985); *Harris v. Crowder,* 174 W.Va. 83, 322 S.E.2d 854 (1984); and *Murredu v. Murredu,* 160 W.Va. 610, 236 S.E.2d 452 (1977)) (additional citation omitted)).

Other courts have also found that monetary consideration is not the only factor to contemplate when determining whether to partition property in kind or by sale. In the case of *Eli v. Eli,* 557 N.W.2d 405 (S.D.1997), the South Dakota Supreme Court addressed the issue of the impact of monetary considerations in deciding whether to partition property in kind or by sale. In that case over 100 acres of land were jointly owned by three members of the Eli family. The land had been owned by the Eli family for almost 100 years, and was used solely as farm land. Two of the co-owners sought to have the land partitioned and sold. A trial judge found that the land would be worth less if partitioned in kind, therefore the court ordered the land be sold at public auction. The co-owner who sought a partition in kind appealed the trial court's decision. The South Dakota Supreme Court found that the trial

court erroneously relied upon the fact that the property would be worth less if partitioned in kind. In reversing the trial court's decision, the *Eli* court reasoned as follows:

> [M]onetary considerations, while admittedly significant, do not rise to the level of excluding all other appropriate considerations.... The sale of property "without [the owner's] consent is an extreme exercise of power warranted only in clear cases." We believe this to be especially so when the land in question has descended from generation to generation. While it is true that the Eli brothers' expert testified that if partitioned, the separate parcels would sell for $50 to $100 less per acre, this fact alone is not dispositive. One's land possesses more than mere economic utility; it "means the full range of the benefit the parties may be expected to derive from their ownership of their respective shares." Such value must be weighed for its effect upon all parties involved, not just those advocating a sale.

557 N.W.2d at 409–410 (internal citations omitted). *See also Harris v. Harris,* 51 N.C.App. 103, 275 S.E.2d 273, 276 (1981) ("[M]any considerations, other than monetary, attach to the ownership of land."); *Schnell v. Schnell,* 346 N.W.2d 713, 721 (N.D. 1984) (finding sentimental attachment to land by co-owner was sufficient to prevent forced sale by other co-owner); *Fike v. Sharer,* 280 Or. 577, 571 P.2d 1252, 1254 (1977) ("[S]entimental reasons, especially an owner's desire to preserve a home, may also be considered [in a partition suit].").

Similarly, in *Delfino v. Vealencis,* 181 Conn. 533, 436 A.2d 27 (1980), two plaintiffs owned a 20.5 acre tract of land with the defendant. The defendant used part of the property for her home and a garbage removal business. The plaintiffs filed an action to force a sale of the property so that they could use it to develop residential properties. The trial court concluded that a partition in kind could not be had without great prejudice to the parties, and that the highest and best use of the property was through development as residential property. The trial court therefore ordered that the property be sold at auction. The defendant appealed. The Connecticut Supreme Court reversed for the following reasons:

> The [trial] court's ... observations relating to the effect of the defendant's business on the probable fair market value of the proposed residential lots ... are not dispositive of the issue. *It is the interests of all of the tenants in common that the court must consider; and not merely the economic gain of one tenant, or a group of tenants.* The trial court failed to give due consideration to the fact ... that the [defendant] has made her home on the property; and that she derives her livelihood from the operation of a business on this portion of the property, as her family before her has for many years. A partition by sale would force the defendant to surrender her home and, perhaps, would jeopardize her livelihood. It is under just such circumstances, which include the demonstrated practicability of a physical division of the property, that the wisdom of the law's preference for partition in kind is evident.

*Delfino,* 436 A.2d at 32–33 (emphasis added). *See also Leake v. Casati,* 234 Va. 646, 363 S.E.2d 924, 927 (1988) ("Even evidence that the property would be less valuable if divided [has been] held 'insufficient to deprive a co-owner of his 'sacred right' to property.'" (quoting *Sensabaugh v. Sensabaugh,* 232 Va. 250, 349 S.E.2d 141, 146 (1986))).

▉ In view of the prior decisions of this Court, as well as the decisions from other jurisdictions, we now make clear and hold that, in a partition proceeding in which a party opposes the sale of property, the economic value of the property is not the exclusive test for deciding whether to partition in kind or by sale. Evidence of longstanding ownership, coupled with sentimental or emotional interests in the property, may also be considered in deciding whether the interests of the party opposing the sale will be prejudiced by the property's sale. This latter factor should ordinarily control when it is shown that the property can be partitioned in kind, though it may entail some economic inconvenience to the party seeking a sale.

▉ In the instant case, the Caudill heirs were not concerned with the monetary value

of the property. Their exclusive interest was grounded in the longstanding family ownership of the property and their emotional desire to keep their ancestral family home within the family.[7] It is quite clear that this emotional interest would be prejudiced through a sale of the property.

The expert for the Caudill heirs testified that the ancestral family home could be partitioned from the property in such away as to not deprive Ark Land of any coal. The circuit court summarily and erroneously dismissed this uncontradicted fact because of the increased costs that Ark Land would incur as a result of a partition in kind. In view of our holding, the additional economic burden that would be imposed on Ark Land, as a result of partitioning in kind, is not determinative under the facts of this case.

We have held that "[t]he question of what promotes or prejudices a party's interest when a partition through sale is sought must necessarily turn on the particular facts of each case." *Consolidated Gas Supply Corp.*, 161 W.Va. at 788, 247 S.E.2d at 715. The facts in this case reveal that, prior to 2001, Ark Land had no ownership interest in the property. Conversely, for nearly 100 years the Caudill heirs and their ancestors owned the property and used it for residential purposes.[8] In 2001 Ark Land purchased ownership rights in the property from some Caudill family members. When the Caudill heirs refused to sell their ownership rights, Ark Land immediately sought to force a judicial sale of the property. In doing this, Ark Land established that its proposed use of the property, surface coal mining, gave greater value to the property. This showing is self-serving. In most instances, when a commercial entity purchases property because it believes it can make money from a specific use of the property, that property will increase in value based upon the expectations of the commercial entity. This self-

created enhancement in the value of property cannot be the determinative factor in forcing a pre-existing co-owner to give up his/her rights in property. To have such a rule would permit commercial entities to always "evict" pre-existing co-owners, because a commercial entity's interest in property will invariably increase its value. *See Butte Creek Island Ranch v. Crim,* 136 Cal.App.3d 360, 368, 186 Cal.Rptr. 252 (1982) ("Plaintiff ... sought a forced sale of the land in order to acquire defendant's interest which he did not desire to sell. This is nothing short of the private condemnation of private land for private purposes, a result which is abhorrent to the rights of defendant as a freeholder.").

We are very sensitive to the fact that Ark Land will incur greater costs in conducting its business on the property as a result of partitioning in kind. However, Ark Land voluntarily took an economical gamble that it would be able to get all of the Caudill family members to sell their interests in the property. Ark Land's gamble failed. The Caudill heirs refused to sell their interests. The fact that Ark Land miscalculated on its ability to acquire outright all interests in the property cannot form the basis for depriving the Caudill heirs of their emotional interests in maintaining their ancestral family home. The additional cost to Ark Land that will result from a partitioning in kind simply does not impose the type of injurious inconvenience that would justify stripping the Caudill heirs of the emotional interest they have in preserving their ancestral family home. *See* Syl. pt. 4, in part, *Croston v. Male,* 56 W.Va. 205, 49 S.E. 136 ("Inconvenience of partition as one of the circumstances authorizing such sale, ... is not satisfied by anything short of a real and substantial obstacle of some kind to division in kind, such as would make it injurious to the owners[.]").

---

**7.** The circuit court's order suggests that, because some family members sold their interest in the property, no real interest in maintaining the family home existed. While it may be true that the family members who sold their interest in the property did not have any emotional attachment to the family home, this fact cannot be dispositively attributed to the Caudill heirs. The interest of the Caudill heirs cannot be nullified or tossed aside, simply because other family members do not share the same sentiments for the family home.

**8.** No one lives permanently at the family home. However, the family home is used on weekends and for special family events by the Caudill heirs.

Ark Land cites to several prior decisions of this Court as being dispositive of the facts in this case. First, Ark Land contends that the decision in *Garlow v. Murphy*, 111 W.Va. 611, 163 S.E. 436 (1932), requires affirming the circuit court's decision in the instant case. Ark Land relies specifically upon syllabus point 2 of *Garlow*, which states:

> An ordinary test of convenience in partition, under the statute, is, Will any interest assigned be materially less in value than the interest undivided? If so, the tract should be sold; if not, it should be partitioned.

This syllabus point is not dispositive because *Garlow* was decided under a version of W. Va.Code 37–4–3 that had no requirement that a sale must not prejudice the interests of a co-owner.[9] The latter requirement was added in 1931, and was explained in *Consolidated Gas Supply Corp.* as follows:

> It is obvious . . . that the 1931 revisions to W. Va.Code § 37–4–3, have resulted in two changes. First, there is no requirement that a person show that all the interests involved in the partition will be promoted. Second, it must be shown that the other interests will not be prejudiced by a partition by sale. Our cases demonstrate that after 1931, a party desiring to compel partition through sale is required to demonstrate that the property cannot be conveniently partitioned in kind, that the interests of one or more of the parties will be promoted by the sale, and that the interest of the other parties will not be prejudiced by the sale.

*Consolidated Gas Supply Corp.*, 161 W.Va. at 788, 247 S.E.2d at 715 (citations omitted).

The other two cases cited by Ark Land, *Myers v. Myers*, 176 W.Va. 326, 342 S.E.2d 294 (1986) (per curiam),[10] and *Wilkins v. Wilkins*, 175 W.Va. 787, 338 S.E.2d 388 (1985) (per curiam),[11] also are not dispositive for the reasons cited by Ark Land. Ark Land relies upon those cases because they restated syllabus point 2 of *Garlow*. We have already shown that syllabus point 2 of *Garlow* has been modified by statute, insofar as there must be a showing that sale of property will not prejudice the interests of a co-owner.[12]

## IV.

### CONCLUSION

In view of the foregoing, we find that the circuit court erred in determining that the property could not be partitioned in kind. We, therefore, reverse the circuit court's order requiring sale of the property. This case is remanded with directions to the circuit

---

9. In *Garlow* a tract of land, called the Murphy tract, was jointly owned by four individuals. The land itself was valuable to the owners because it contained gas, oil and coal minerals. One co-owner, Estelle C. Davis, sought to have the Murphy tract partitioned in kind. Ms. Davis wanted to have the Murphy tract partitioned in kind so that she could obtain a specific portion of the property that was adjacent to a separate tract of coal land that she owned. Two co-owners, Delia B. Hoskinson and Michael G. Murphy, sought to have the land sold. The circuit court ordered the land be sold. This Court reversed the circuit court's ruling and ordered that the land be partitioned in kind. In doing so, this Court found as follows:

> The only reason given by the commissioners that a sale would promote all the interests was: "You couldn't divide them gas wells into eleven parts." That, of course, is no substantial reason, as sale of the oil and gas can be made independently of the disposition of the remainder of the tract.

*Garlow*, 111 W.Va. at 615, 163 S.E. at 439.

10. In *Myers* the circuit court ordered the sale of two separate tracts of land jointly owned by former spouses. Both tracts of land contained a residential dwelling (one dwelling was the former marital home). On appeal, this Court reversed the circuit court's decision and ordered the properties be partitioned in kind, as requested by the former wife.

11. In *Wilkins* the circuit court ordered the sale of property jointly owned by former spouses. On appeal, this Court affirmed the circuit court's decision because the property was not used as residential property by the parties. *See Wilkins*, 175 W.Va. at 791, 338 S.E.2d at 392 ("The case now before us is not one, however, where, as a result of a judicial sale, a wife would be ousted from the marital abode, or where a partition suit might frustrate a divorce decree's provision of exclusive possession by one party of the marital residence. The appellant did not reside on the property she sought to partition." (Citations omitted)).

12. Because we find that the circuit court committed error in ordering the sale of the property, we need not address other issues raised by the Caudill heirs.

court to enter an order requiring the property to be partitioned in kind, consistent with the report and testimony of the Caudill heirs' mining engineer expert, Gary F. Acord.

Reversed and Remanded.

Chief Justice MAYNARD concurs, in part, and dissents, in part, and files a separate opinion.

MAYNARD, Chief Justice, concurring, in part, and dissenting, in part.

I concur with the new law created by the majority in this case. That is to say, I agree that evidence of longstanding ownership along with sentimental or emotional attachment to property are factors that should be considered and, in some instances, control the decision of whether to partition in kind or sale jointly-owned property which is the subject of a partition proceeding.

I dissent in this case, however, because I do not believe that evidence to support the application of those factors was presented here. In that regard, the record shows that none of the appellants have resided at the subject property for years. At most, the property has been used for weekend retreats. While this may have been the family "homeplace," a majority of the family has already sold their interests in the property to the appellee. Only a minority of the family members, the appellants, have refused to do so. I believe that the sporadic use of the property by the appellants in this case does not outweigh the economic inconvenience that the appellee will suffer as a result of this property being partitioned in kind.

I am also troubled by the majority's decision that this property should be partitioned in kind instead of being sold because I don't believe that such would have been the case were this property going to be put to some use other than coal mining. For instance, I think the majority's decision would have been different if this property was going to be used in the construction of a four-lane highway. Under those circumstances, I believe the majority would have concluded that such economic activity takes precedence over any long-term use or sentimental attachment to the property on the part of the appellants.

In my opinion, coal mining is an equally important economic activity. This decision destroys the value of this land as coal mining property because the appellee would incur several million dollars in additional costs to continue its mining operations. As a result of the majority's decision in this case, many innocent coal miners will be out of work.

Accordingly, for the reasons set forth above, I respectfully concur, in part, and dissent, in part, to the decision in this case.