654 S.E.2d 621

**Bill E. MORTON and Jess R. Morton, Plaintiffs Below, Appellees**

**v.**

**UNKNOWN HEIRS OF Ernest M. VAN CAMP; Lilly Tucker; Unknown Heirs of Margaret Van Camp Price; Unknown Heirs of Dorothy Van Camp; Unknown Heirs of Helen Van Camp; Unknown Heirs of Violet Van Camp; Unknown Heirs of Martha Van Camp; Herbert Hopkins; Natalie Steele; Glenna May (Haynes) Dietz; Barbara Ann (Haynes) Gunnoe Young; Mary Lou (Haynes) Mason; Carolyn Ruth (Haynes) Melton; William Ronald Haynes; Charlotte Elizabeth (Haynes) Plantz; and Unknown Heirs of Squire Van Camp, Defendants Below, Appellees.**

**Linda Kessler Archer, Defendant Below, Appellant.**

**No. 33341.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 9, 2007.

Decided Nov. 9, 2007.

Dissenting Opinion of Justice Albright Nov. 28, 2007.

Larry G. Kopelman, Esq., Charleston, for Appellant.

Franklin L. Gritt, Jr., Esq., Lisa M. Moye, Esq., Gritt Law Offices, Winfield, Harvey D. Peyton, Esq., Peyton Law Firm, Nitro, J. Mark Adkins, Esq., Bowles Rice McDavid Graff & Love, Anne E. Dietz, Esq., Charleston, James E. Garvin, Esq., Turley Garvin & Turley, Hurricane, for Appellees.

PER CURIAM:

The appellant, Linda Kessler Archer, appeals from the September 18, 2006, order of the Circuit Court of Kanawha County, which directed the sale of real property wherein she owns an undivided one-seventh interest in the property. Based upon the parties' briefs and arguments in this proceeding, as well as the relevant statutory and case law,

we are of the opinion that the circuit court did not commit reversible error and accordingly, affirm the decision below.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On October 20, 2005, the appellees, Bill E. Morton and Jess R. Morton, filed a complaint seeking to sell 25.5 acres of undeveloped land in Cross Lanes, West Virginia. The appellees own an undivided six-sevenths interest of the property, while the appellant, Linda Kessler Archer, owns a one-seventh undivided interest in the property. The appellant and her daughter currently reside on the land in a mobile home and desire to remain living there. The appellees seek to develop the land and state that the only viable entrance is through the portion of property on which the appellant and her daughter reside, making it nearly impossible for development of the residue of the land.

The appellant has resided on the property for much of her lifetime as she grew up living there with her parents, siblings, and grandmother in a house her parents built. When that house burnt, she continued to reside on the property in a mobile home. The appellant, however, has not continuously lived on the property as she lived in Florida for several years before returning to reside on the property approximately seven years prior to this litigation. After returning to West Virginia to live on the property, the appellant testified that she sold timber from the land without sharing any of the proceeds with the appellees.

On September 18, 2006, the Circuit Court of Kanawha County ordered the property to be sold by a Special Commissioner and to distribute the sale proceeds among the parties pursuant to their ownership interest. The circuit court concluded that, "if Ms. Archer, who only has one-seventh interest in the subject real estate, received the 3.64 acres by partition, the remaining owners would receive much less valuable land and would be required to expend substantial sums of money to place the remaining acreage in a position whereby the acreage could

be developed for residential purposes." Subsequently, the appellant, who is the only party objecting to the sale of the land, filed an appeal of the circuit court's order with this Court.

## II.

## STANDARD OF REVIEW

As we explained in Syllabus Point 1 of *Public Citizen, Inc. v. First National Bank in Fairmont*, 198 W.Va. 329, 480 S.E.2d 538 (1996), appellate oversight of the findings and conclusions of the circuit court made after a bench trial entails a two-pronged deferential standard of review. We held that: "The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review." *Id.* With these standards in mind, we now consider the issues presented in this case.

## III.

## DISCUSSION

In this case, the appellees seek to sell a 25.5 acre parcel of land in which they own an undivided six-sevenths interest. Conversely, the appellant, who owns a one-seventh undivided interest in the property, maintains that the property can be conveniently partitioned in-kind. She states that the interests of the other parties will not be prejudiced by the partition since the one-seventh share she is seeking will not interfere with a developer wanting to maximize the use of the property. The appellant further argues that she is not interested in monetary gain in selling the property and is only concerned with being allowed to continue living on the land.

The appellant points out that in *Ark Land Company v. Harper, et. al.*, 215 W.Va. 331, 599 S.E.2d 754 (2004), this Court dealt with a dispute concerning 75 acres of land owned by a family for approximately 100 years. In that case, a dispute arose after the Ark Land Company purchased 67.5% undivided interest in the property. Ark Land sought to sell the entire parcel of land, while the family objected to the sale and requested a partition in kind. The appellant states that in *Ark Land*, this Court explained that "we [were] troubled by the circuit court's conclusion that partition by sale was necessary because the economic value of the property would be less if partitioned in kind." This Court further stated that, "we have long held that the economic value of property may be a factor to consider in determining whether to partition in kind or to force a sale . . ., [h]owever, our cases do not support the conclusion that economic value of property is the exclusive test for determining whether to partition in kind or to partition by sale." 215 W.Va. at 337, 599 S.E.2d at 760. The appellant then cites Syllabus Point 3 of *Ark Land*, wherein this Court held:

> In a partition proceeding in which a party opposes the sale of property, the economic value of the property is not the exclusive test for deciding in whether to partition in kind or by sale. Evidence of longstanding ownership, coupled with sentimental or emotional interests in the property, may also be considered in deciding whether the interests of the party opposing the sale will be prejudiced by the property's sale. This latter factor should ordinarily control when it is shown that the property can be partitioned in kind, though it may entail some economic inconvenience to the party seeking a sale.

The appellant further argues that it is her common law right to keep her portion of land where she has lived for most of her life. She states that none of the co-owners have lived on the property and that sale of the land will create undue hardship on her as she will have to find another place to live. The appellant contends that the circuit court's decision should be reversed and that upon remand a commissioner should be appointed to determine the location and amount of land that, in his or her opinion, would adequately represent a one-seventh value of the whole in order that she may maintain her homestead.

The appellees respond that the circuit court properly ordered the sale of the property. They explain that W.Va.Code § 37-4-3, in part, provides:

[I]n any case in which partition cannot be conveniently made, if the interests of one or more of those who are entitled to the subject, or its proceeds, will be promoted by a sale of the entire subject, or allotment of part and sale of the residue, and the interest of the other person or persons so entitled will not be prejudiced thereby, the court, notwithstanding the fact that any of those entitled may be an infant, insane person, or convict, may order such sale, or such sale and allotment, and make distribution of the proceeds of sale.

They further point out Syllabus Point 3 of *Consolidated Gas Supply Corp. v. Riley*, 161 W.Va. 782, 247 S.E.2d 712 (1978), wherein this Court held:

By virtue of W.Va.Code, 37–4–3, a party desiring to compel partition through sale is required to demonstrate that the property cannot be conveniently partitioned in kind, that the interests of one or more of the parties will be promoted by the sale, and that the interests of the other parties will not be prejudiced by the sale.

The appellees maintain that the property cannot be conveniently partitioned. They state that the initial 3.64 acre portion of the land requested by the appellant would have substantially diminished the value of the residue and would have created a considerable expense to be incurred by the appellees to make the residue suitable for residential purposes. They further argue that the appellant is the only individual able to derive any benefit from the property and that she does so without regard to the remaining interests of the appellees, who own six-sevenths of the property.

In this case, the appellant initially submitted a survey of 3.64 acres where her mobile home is located and argued that she should be given that parcel of land because her home could not be moved to another location due to its age. However, after her own expert, as well as the appellee's expert, testified that the 3.64 acres was the most valuable acreage and the only acreage suitable for a home site, the appellant changed her mind. It was only after realizing that the testimony of the experts made it unlikely that she would be given the 3.64 acre parcel she requested, that she then said her mobile home could be moved to another location. She then asked that the property be partitioned allowing her to stay somewhere else on the land. She did not, however, provide a survey of an alternative site for her mobile home. The appellant's failure to produce a survey for an alternative site did not allow the circuit court to evaluate the viability or value of any alternative sites. .

In making its decision, the circuit court's order demonstrates that the court considered the expert testimony presented by the appellant and the appellee. The appellees expert, Darrell Rolsten, a licensed real estate appraiser, testified that the 3.64 acres requested by the appellant had a fair market value of $50,000, while the remaining 22 acres, which would have been given to the appellees, had a value of $33,000. He further testified that the 3.64 acres was the only flat land of the entire 25.5 acres suitable for a homesite and that any development of the remaining acreage would require significant excavation and the building of a road to access the remaining acreage. Thus, Mr. Rolsten opined that the partition of the 3.64 acres would be an inequitable distribution of the acreage. Moreover, the appellant's expert, Eddie Estep, also a licensed real estate appraiser, indicated that the fair market value for the 3.64 acres of land was $15,000; however, he stated that he was not prepared to offer an opinion on the fair market of the remaining 22 acres.

It is important to note that while the two experts may have disagreed with regard to the fair market value of the 3.64 acres, both did agree that the 3.64 acres constituted the most valuable portion of the subject real estate. Likewise, appellee Bill E. Morton, who is a real estate developer, testified that from his knowledge and experience, the 3.64 acres was the most valuable acreage of the subject real estate because it is the only portion of the acreage currently suitable for development.

■ Having reviewed the entire record before this Court, we believe that the circuit court correctly found that the real estate in question cannot be conveniently partitioned

in kind. It is clear from the testimony that if the appellant, who holds one-seventh interest in the property, received by partition the 3.64 acres on which her mobile home is located, the remaining owners would receive much less valuable land and would be required to expend substantial sums of money to place the remaining acreage in a position whereby it could be developed for residential purposes. As it stands today, the appellant and her daughter, who has no ownership interest in the property, are the only individuals who are able to enjoy the benefit of residing on the real estate. One example of this was the appellant's sale of timber from the property wherein she kept all of the proceeds from that sale in spite of the fact that she only holds a one-seventh undivided ownership interest. Conversely, however, if the real estate is sold, the remaining owners, who hold six-sevenths interest in the property, will be able to receive a benefit from their ownership interests by deriving a monetary benefit from the sale.

While this Court is sensitive to the appellant's desire to reside on the property, the interests of all the parties to this matter must be considered as a whole and the desires of one party cannot adversely impact the rights of the remaining parties. Thus, since the property cannot be conveniently partitioned, the interests of the majority of the property owners will be promoted by a sale of the property and the interests of the appellant will not be prejudiced as she will receive one-seventh of the proceeds from that sale.

After thoroughly reviewing the record and considering all of the parties' arguments, we find no error with the circuit court's September 18, 2006, order. Thus, we affirm the circuit court's decision.

## IV.

## CONCLUSION

Accordingly, the final order of the Circuit Court of Kanawha County entered on September 18, 2006, is affirmed.

Affirmed.

Justice STARCHER and Justice ALBRIGHT dissent and reserve the right to file dissenting opinions.

ALBRIGHT, Justice, dissenting:
(Filed Nov. 28, 2007)

I dissent from the majority opinion that endorses the lower court's failure to observe the strong preference for partition in kind rather than sale under the long-established property law of this state. This rush to judgment has unfairly resulted in an heir being deprived of the opportunity to retain a small part of her home place without a full and fair determination that partition in kind was, under the circumstances of this case, not feasible.

Partition by sale was unknown at common law; the right to partition by sale rests solely on statutory enactment. *See Loudin v. Cunningham,* 82 W.Va. 453, 456, 96 S.E. 59, 60 (1918); W. Va.Code § 37-4-3 (1957) (Repl. Vol. 2005). Although partition by sale is possible, partition in kind remains the preferred method by which interests in jointly owned land should be divided. For well over a hundred years, this Court has held that:

Joint owners of land are entitled to have partition in kind.... A sale cannot be decreed in a partition suit unless it appears, by report of commissioner or otherwise by the record, that partition cannot be conveniently made, and also that the interests of those interested in the land or its proceeds will be promoted by a sale.

Syl. Pt. 7, *Roberts v. Coleman,* 37 W.Va. 143, 16 S.E. 482 (1892). This preference for partition in kind was most recently acknowledged in syllabus point three of *Ark Land Co. v. Harper,* 215 W.Va. 331, 599 S.E.2d 754 (2004), wherein this Court stated:

In a partition proceeding in which a party opposes the sale of property, the economic value of the property is not the exclusive test for deciding whether to partition in kind or by sale. Evidence of longstanding ownership, coupled with sentimental or emotional interests in the property, may also be considered in deciding whether the interests of the party opposing the sale will be prejudiced by the property's sale. This latter factor should ordi-

narily control when it is shown that the property can be partitioned in kind...."

Obviously, the first question that needs to be addressed in a partition case is whether partition in kind can be conveniently made. *See Consolidated Gas Supply Corp. v. Riley*, 161 W.Va. 782, 247 S.E.2d 712 (1978). In order to decide this issue, "[t]he most usual method of ascertaining whether the land is susceptible of convenient partition is by the report of commissioners." Syl. Pt. 2, in part, *Loudin v. Cunningham*, 82 W.Va. at 453, 96 S.E. at 59.

The record in this case, which the majority only selectively relates parts of in its opinion, reflects that no commissioners were appointed to make the primary determination of whether the jointly owned property could be conveniently partitioned in kind, and therefore the decision to order sale of the property was premature at best.

To gain a better insight into this case, it is desirable to supplement the abbreviated recitation of facts in the majority opinion. The record reflects that Appellant and her sister were initially represented by an attorney,[1] who responded to the Morton brothers' request for partition by sale by filing an answer asserting that "[t]he property can most certainly be partitioned in kind." A dispute arose between the attorney and the sisters about payment of legal fees before any court appearance occurred The record contains a letter from the attorney dated January 18, 2006, addressed to Appellant's sister, expressing his concern about the agreement he believed he had reached with the sisters regarding fees. In that letter, the attorney further indicated that if the partition suit could not be resolved amicably, he would move the court to withdraw as counsel for the sisters. On February 14, 2006, a status conference was held and matters which occurred at that hearing were related in an Agreed Order filed on March 21, 2006. This order reflects, among other things, that the parties had all agreed that the property was not susceptible to partition in kind. The record also contains a letter dated May 17,

2006, from Appellant to the presiding judge in which Appellant stated that she never requested that this attorney represent her, and she believed the attorney was misrepresenting her interests. The record shows that a status conference was held on June 2, 2006, with the resulting order reflecting: the attorney's motion to withdraw as counsel for the sisters was granted; the appraisal Appellant obtained for the 3.64 acres she desired as her 1/7th interest was lodged in the court file; a final hearing was set for June 28, 2006, with the parties being advised that the lower court would arrive at a final decision regarding partition at the end of that hearing; and directing the sisters to "move with dispatch to obtain other counsel to appear in this matter on their behalf." There is no transcript in the certified record of what occurred on June 28, 2006, although it is clear from the September 18, 2006, order of the court that a hearing was held and testimony was received by the court on that date. Among the items filed in the court record on June 28, 2006, was Appellant's appraisal of 3.64 acres.

The record does contain a transcript of the continuation of the June hearing, held on July 28, 2006. At the July 28 hearing, Appellant was represented by a different lawyer who kindly donated his services to try to promote the satisfactory resolution of the dispute. This attorney questioned two appraisers who testified at the July 28, 2006, hearing; one appraiser had been retained by the Mortons and the other appraiser engaged by Appellant. Appellant's attorney directed questions to both appraisers about whether it was possible to carve out some portion of land that would represent a 1/7th interest which would allow Appellant to remain on the property. Significantly, both appraisers indicated it was possible. Appellant also testified at the hearing that although she would prefer not to have to move her trailer, she was willing to bear the expense to move to a different location on the property if it meant that she could keep a part of the land.

---

1. At the outset, Appellant and her sister sought an attorney to protect their interests in the subject real estate. During the course of the litiga-  tion, Appellant obtained by quitclaim deed her sister's 1/28th interest in the property, giving Appellant a 1/7th interest in the tract.

Based upon these disputed contentions, the lower court determined that "the subject real estate cannot be conveniently partitioned in kind" and ordered partition by sale. I respectfully submit that the court below abused its discretion in making that ruling because the evidence before the court suggested the contrary: that the land could be partitioned in kind to give Appellant 1/7th of the value thereof at some suitable location, leaving the remainder to be sold, as the petitioners requested. Since the record does not establish that partition in kind could or could not be conveniently made, the lower court had a duty to conform the proceedings with the longstanding practice of appointing commissioners for the purpose of obtaining a report addressing the primary question of whether partition in kind could be conveniently made. Failing to do so represents a blatant abuse of discretion which merits the reversal of the decree below.

I recognize that the case had dragged on for some time, undoubtedly giving rise to frustration among the parties. However, the court below was fully aware that the Appellant's interests had not been fully represented, that the supposed agreed order favoring sale did not enjoy Appellant's endorsement and that Appellant had experienced difficulty in acquiring and keeping counsel throughout the proceeding. When counsel was obtained, a sufficient record was made to indicate that partition in kind might well be conveniently made so as to address Appellant's right to 1/7th of the value of the land, in kind, and to address the other parties' desire to have their 6/7ths sold at sale.

As I believe that the proper resolution of this case lies in reversal of the lower court's decision and remand for the appointment of commissioners to address whether partition in kind is feasible, I respectfully dissent.

I am authorized to state that Justice STARCHER joins in this dissenting opinion.